808 F.2d 337
 Gregory Lee ALEXANDER, Appellant,
v.
Charles CURTIS, Charles Burke, Keith Hudson, Dick Rash, Don
Alexander, Don Page and Robert Myers, Individually and as
Trustees for and on Behalf of the Craigsville Camp Meeting
Association, a West Virginia unincorporated association, Appellees,
and
Craigsville Camp Meeting Association, Defendant.
 No. 86-2004.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 15, 1986.
Decided Jan. 8, 1987.
 
 James C. Peterson, Charleston, W.Va. (Hill & Peterson, R. Edison Hill, on brief), for appellant.
 Dennis C. Sauter, Charleston, W.Va. (Jackson, Kelly, Holt & O'Farrell, Stephen R. Crisplip, on brief), for appellees.
 Before WINTER, Chief Judge, and RUSSELL and WIDENER, Circuit Judges.
 WIDENER, Circuit Judge:
 
 
 1
 Gregory Lee Alexander, the plaintiff below, appeals from the district court's judgment entered in favor of the defendants, the Trustees of the Craigsville Camp Meeting Association, on claims arising from a severe ankle injury Alexander received while performing work at the camp. At the close of plaintiff's evidence the trial court directed a verdict against Alexander, finding that the evidence was insufficient to show a latent defect in the defendants' premises. The sole question presented by this appeal is whether the court was correct in directing a verdict for the Trustees. Because we agree with the district court that Alexander failed to introduce evidence sufficient to support a verdict in his favor, we affirm.
 
 
 2
 The Craigsville Camp Meeting Association, an unincorporated West Virginia association, owned a campground in Craigsville, West Virginia, where it held an annual week-long meeting for members and guests. Alexander had attended this meeting every year of his life except one, in 1972. While at the camp, Alexander was in charge of operating the sound and recording system used by the Association, and was paid a small fee for his assistance. In either 1976 or 1977, a decision was made to relocate the sound equipment from the stage area to a loft above the meeting room. At the same time, a wooden "climbing device" was built to provide access to this loft. The device consisted of two pieces of apparently 2" X 8" lumber, with the wide sides in a vertical plane and parallel to each other. The narrow sides were inclined somewhat from the vertical and treads of 2" X 8" timber were affixed. There was some dispute over whether this device should properly be labeled a stair or a ladder. Alexander's expert witness, Dr. Robert Sleight, testified that the device had characteristics of both a stair and a ladder, and Alexander testified that he generally descended it as one would a stair, i.e., with his back to the device. On June 27, 1984, Alexander fell from the device and suffered a compound fracture of his right ankle. Alexander subsequently filed suit against the Trustees claiming that he was an invitee on the defendants' premises, and that the defendants were negligent in failing to exercise ordinary care to make the premises safe for him, in that the climbing device was defective.
 
 
 3
 The test for the granting of a directed verdict is whether, without weighing the evidence, "there can be but one conclusion as to the verdict that reasonable jurors could have reached." Wheatley v. Gladden, 660 F.2d 1024, 1027 (4th Cir.1981). The question is not whether there is any evidence, but whether there is sufficient evidence upon which a jury could properly base a verdict in favor of the non-moving party. Gairola v. Commonwealth of Virginia Department of General Services, 753 F.2d 1281, 1285 (4th Cir.1985). A mere scintilla of evidence will not defeat the motion. Id. To avoid a directed verdict, a plaintiff must present sufficient evidence to establish a prima facie case. Id.
 
 
 4
 In West Virginia, a landowner owes to an invitee the duty to exercise ordinary care in maintaining the premises in a reasonably safe condition.[1] Burdette v. Burdette, 147 W.Va. 313, 127 S.E.2d 249 (1962). This duty is not unlimited, however. A landowner is not required to obviate dangers which are open and obvious, nor to warn invitees of such patent hazards. "There is no liability for injuries from dangers that are obvious, reasonably apparent, or as well known to the person injured as they are to the owner or occupant." Id. 127 S.E.2d at 252. It was therefore an essential element of Alexander's prima facie case that he show a defect in the defendants' premises which operated as a hidden danger or trap. See Kesner v. Trenton, 158 W.Va. 997, 216 S.E.2d 880, 888 (1975).
 
 
 5
 In passing upon a motion for a directed verdict, both the trial court and the reviewing court must examine the evidence most favorable to the non-moving party and give that party the benefit of all reasonable inferences from the evidence. Wheatley v. Gladden, 660 F.2d 1024, 1026 (4th Cir.1981). This the district court did, assuming for the purpose of the motion that Alexander was an invitee and that the defendants' climbing device was defective. The critical question, then, is whether Alexander introduced enough evidence to show that the climbing device harbored a defect that was latent in nature. We agree with the district judge that the plaintiff failed to meet this burden.
 
 
 6
 Dr. Sleight, a "human factors" specialist,[2] identified a number of defects in the climbing device which he testified rendered the device unreasonably dangerous. These defects included excessive steepness, lack of handrails, absence of any extension of the device above the bottom of the loft, and a general lack of uniformity in the device's measurements. Since, by the plaintiff's admission, the entire device was in plain view, all of these defects had to be readily visible to anyone approaching the device. Dr. Sleight also testified, however, that he believed the accident to have been caused specifically by the top tread protruding too far out over the next step below. In our opinion this was also a patent and readily visible condition. The entire device was in clear view, and all aspects of it could be seen easily. There is no contrary testimony. Alexander admitted that he had traversed the device at least fifty times since its construction, and admitted to being present when the device was built. Alexander also admitted that no changes had been made in the device during the time it was in use. The steps themselves are completely visible to anyone looking down at the device. Furthermore, Alexander introduced no evidence as to a hidden nature of the protrusion. Under these circumstances, we are unable to see that any protrusion of the top tread can be considered a hidden condition.
 
 
 7
 Alexander points to part of Dr. Sleight's testimony where the witness purportedly states that the protrusion of the top step was "quite inconspicuous". In the context of the questioning, however, it is apparent that Dr. Sleight was not testifying as to the latency of the condition. Rather, he was responding to the question of why he had marked the protruding step with red tape when photographing the side of the device. Dr. Sleight testified that he did so to highlight the protrusion, since the gray step would have been inconspicuous when viewed against the gray background of the wall to the side. In the context of the question, the only reasonable inference to be drawn is that the step was inconspicuous when viewed in a photograph from the side against a gray wall. Dr. Sleight's testimony cannot be construed to mean that the protrusion was inconspicuous to one viewing the device from above. To so infer would be to engage in speculation and conjecture, and so the trial court correctly withdrew the case from the jury. See, e.g. Ford Motor Co. v. McDavid, 259 F.2d 261, 266 (4th Cir.). cert. denied, 358 U.S. 908, 79 S.Ct. 234, 3 L.Ed.2d 229 (1958).
 
 
 8
 Accordingly, the judgment of the district court is
 
 
 9
 AFFIRMED.
 
 HARRISON L. WINTER, Chief Judge, dissenting:
 
 10
 I agree with the majority that the determinative question in this case is whether plaintiff adduced significant evidence to show that the climbing device harbored a latent defect. I think that he did and as a consequence the district court was in error in directing a verdict for defendants at the close of plaintiff's evidence.
 
 
 11
 As the majority recites, there was evidence that plaintiff's fall was caused by the protrusion of the ninth tread over the eighth tread so that it was difficult for one descending the almost perpendicular device to put his foot squarely on the eighth tread. Plaintiff's expert testified that he could not discern this anomaly when he first examined the device. He did not appreciate the protrusion of the ninth tread until after he had examined the premises and analyzed the photographs which he took.[1]
 
 
 12
 In short, when the evidence shows that an expert makes a careful and considered examination of the device and "carefully positioned every step going up and down" and still did not detect the crucial protrusion until he analyzed photographs at a later date, it cannot be said that as a matter of law that this particular defect was open or obvious. The trier of the fact could well conclude otherwise.
 
 
 13
 I would reverse the entry of judgment for defendants and remand the case for a new trial.
 
 
 
 [1]
 Because jurisdiction is based on diversity of citizenship, 28 U.S.C. Sec. 1332, we look to the law of West Virginia to determine landowners' liability
 
 
 [2]
 Dr. Sleight testified that "human factors" involved the study of how man interacts with his environment
 
 
 [1]
 As the majority discusses, the expert also testified that he supplied a red mark to a photograph of the device to overcome the inconspicuousness of the tread depicted against the gray block wall. Unlike the majority, I think that if inconspicuous when depicted from the side, the protruding tread would have been even more inconspicuous when viewed from above by one descending the device