522 S.E.2d 436

**Patricia A. MALLET and Ernest R. Mallet, Her Husband, Plaintiffs Below, Appellants,**

v.

**Selbert PICKENS and Anita Pickens, His Wife, Defendants Below, Appellees.**

**No. 25807.**

Supreme Court of Appeals of West Virginia.

Submitted May 11, 1999.

Decided July 21, 1999.

Roger D. Williams, Esquire, Charleston, West Virginia, Attorney for Appellants.

Heather Heiskell Jones, Esq., Robert A. Lockhart, Esq., Spilman, Thomas & Battle, Charleston, West Virginia, Attorneys for West Virginia Insurance Federation, Amicus Curiae.

David A. Sims, Esquire, Debra Tedeschi Hall, Esquire, Sims & Hall, Elkins, West Virginia, Attorneys for Appellees.

McGRAW, Justice.

Appellants Patricia A. Mallett and Ernest R. Mallet appeal a grant of summary judgment entered against them in their tort action, in which they sought damages for an injury Mrs. Mallet sustained when visiting

the home of their friends, Selbert Pickens and Anita Pickens. The lower court granted summary judgment on the basis that Mrs. Mallet, as a social guest, was merely a licensee upon the property of the Pickenses, and that the Pickenses had no duty to Mrs. Mallet, save to refrain from willfully or wantonly injuring her. The Mallets appeal, claiming that Mrs. Mallet should be considered an invitee, or, alternatively, that this Court should instead apply a duty of reasonable care upon landowners with respect to all non-trespassing entrants. Because we concur with the Mallets and choose to abolish the common law distinction between licensees and invitees, following the modern trend in the development of premises liability law, we must reverse the decision of the lower court.

friend's medical bills to their insurance carrier, which denied the claim. The Mallets filed suit, and the lower court granted summary judgment in favor of Mr. and Mrs. Pickens, ruling that Mrs. Mallet was a licensee, and the Pickenses did not breach their duty of care toward Mrs. Mallet, which was merely the duty not to willfully or wantonly injure her. The Mallets claim the lower court erred in finding Mrs. Mallet a licensee, and they ask, alternatively, that we abolish the licensee/invitee distinction and adopt for landowners a duty of reasonable care under the circumstances for all non-trespassing entrants of land. Because we now abandon the common law distinction between licensees and invitees, we reverse the decision of the circuit court.

## I.

### FACTUAL BACKGROUND

On July 23, 1994, the appellants, Patricia and Ernest Mallet, decided to visit their good friends, the Pickens family. Mrs. Pickens had been injured some time before in an auto accident, and the Mallets wanted to wish her well in her recovery. Although the two families often visited one another, the Pickenses did not know that the Mallets were coming to visit that day.

The Pickenses were having work done to their home, so at the time of the visit, the only access to the front door of the house was by way of a set of temporary, wooden stairs, which did not have a railing or banister. Additionally, because of the construction, a masonry block had been left on the ground near the steps. When Mrs. Mallet exited the home after the visit, the stairs shifted under her weight and she fell, striking her head on the block. Mrs. Mallet suffered broken bones in her face that required surgery.

The Mallets' health insurance carrier originally denied Mrs. Mallet's claim, on the basis that a third party (the Pickenses) was at fault, and that the third party should pay the medical bills. The Pickenses submitted their

## II.

### STANDARD OF REVIEW

■ "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). A party moving for summary judgment faces a well-established burden: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Surety Co. v. Federal Insur. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

■ This Court's right to respond to changes in the law is also manifest. Though some have argued that it is not this Court's prerogative to alter the common law in any substantial way, and that our Constitution prohibits such amendments, we have held that, "Article VIII, Section 13 of the West Virginia Constitution and W. Va.Code, 2–1–1, were not intended to operate as a bar to this Court's evolution of common law principles, including its historic power to alter or amend the common law." Syl. pt. 2, *Morningstar v. Black and Decker Mfg. Co.*, 162 W.Va. 857, 253 S.E.2d 666 (1979).[1] We elaborated on this holding in a later case:

---

**1.** Our opinion in *Morningstar* offers a superb overview of the way that other jurisdictions have

faced new developments to the common law.

In *Morningstar v. Black and Decker Manufacturing Co.,* . . . we discussed at some length the role of the English common law as precedent for this Court. There, we determined that Article VIII, Section 13 of our Constitution, and W. Va.Code, 2–1–1, which established the English common law as of 1863 as a part of our law, "were not intended to operate as a bar to this Court's evolution of common law principles, including its historic power to alter or amend the common law." . . . .

We did not hold in *Morningstar* that we would ignore the English common law, but only that we are not required to accept it as forever binding us, to the point where we cannot make our own assessment of the reasonableness of an ancient common law rule in light of the present condition of our society.

*Markey v. Wachtel,* 164 W.Va. 45, 58, 264 S.E.2d 437, 445 (1979) (citations omitted).

Today we make our own assessment of the reasonableness of the ancient common law distinction between licensees and invitees, and find that it does not comport with the present condition of our society.

## III.

## DISCUSSION

### A.

### *Current Law*

■ West Virginia common law presently recognizes a difference regarding the duty owed to entrants of land. An entrant of land must fit into the licensee, invitee, or trespasser category and is owed a different duty of care from a landowner, depending upon that status.

The duty owed to an invitee was outlined in Syl. pt. 2 of *Morgan v. Price*[, 151 W.Va. 158, 150 S.E.2d 897 (1966) ], where we said:

> "The owner or the occupant of premises owes to an invited person the duty to exercise ordinary care to keep and maintain the premises in a reasonably safe

condition." Point 2 Syllabus, *Burdette v. Burdette,* 147 W.Va. 313[, 127 S.E.2d 249 (1962) ].

. . . .

However, in the case of a licensee, that is a person on another's property with expressed or implied permission, the property owner does not have to correct the dangers arising from existing conditions. In the Syllabus of *Hamilton v. Brown,* . . . [157 W.Va. 910, 207 S.E.2d 923 (1974),] we said:

> "Mere permissive use of the premises, by express or implied authority ordinarily creates only a license, and as to a licensee, the law does not impose upon the owner of the property an obligation to provide against dangers which arise out of the existing condition of the premises inasmuch as the licensee goes upon the premises subject to all the dangers attending such conditions." *See also Miller v. Monongahela Power Co.,* 184 W.Va. [663,] 667–68, 403 S.E.2d [406,] 410–11 [ (1991) ].

*Cavender v. Fouty,* 195 W.Va. 94, 98, 464 S.E.2d 736, 740 (1995) (per curiam); *accord Self v. Queen,* 199 W.Va. 637, 487 S.E.2d 295 (1997) (per curiam). The third category is that of trespasser, which we have defined as follows:

> A trespasser is one who goes upon the property or premises of another without invitation, express or implied, and does so out of curiosity, or for his own purpose or convenience, and not in the performance of any duty to the owner.

Syl. pt. 1, *Huffman v. Appalachian Power Co.,* 187 W.Va. 1, 415 S.E.2d 145 (1991); *accord Waddell v. New River Co.,* 141 W.Va. 880, 93 S.E.2d 473 (1956).[2]

### B.

### *History of the Trichotomy*

From the outset we must bear in mind that the categories of licensee, invitee, and trespasser evolved in a much different time, and in a significantly different legal climate than exists today. Scholars studying the

---

**2.** We make no change today to our law and its treatment of trespassers, nor to the complex body

of law dealing with exceptions to the normal standard of care with regard to trespassers.

subject regard the English cases of *Parnaby v. Lancaster Canal Co.*, 11 Ad. & E. 223, 113 Eng. Rep. 400 (Ex. 1839), and *Southcote v. Stanley*, 1 H. & N. 247, 156 Eng. Rep. 1195 (Ex. 1856), as the progenitors of the licensee/invitee distinction, soon adopted by jurisdictions in this country, *e.g. Sweeny v. Old Colony & Newport R.R. Co.*, 92 Mass. (10 Allen) 368, 87 Am. Dec. 644 (1865).[3]

The ancient precept of "sanctity of property," and the concept of "privity of contract," were the basic principles underpinning the employment of these categories. *See* Charles P. Dribben, Comment, *The Outmoded Distinction Between Licensees and Invitees*, 22 Mo. L.Rev. 186, 188 (1957). One of the main "benefits," as seen through eyes of the time, of employing the licensee/invitee/trespasser trichotomy was the protection of property owners, who were a privileged minority, from the vagaries of juries, comprised mostly of land entrants and not landowners.[4]

Inherent in such a scheme was the notion that a jury could not be trusted to enter a just verdict; however, we have long ago cast off such suspicion of the jury system:

> Chesterton, the "prince of paradox," framing the experience of two millennia in *Tremendous Trifles: The Twelve Men*, said:
>
> > "Our civilization has decided, and very justly decided, that determining the guilt or innocence of men [natural or artificial] is a thing too important to be trusted to trained men. It wishes for light upon that awful matter, it asks men who know no more law than I know, but who can feel the things that I felt in the jury box. When it wants a library cata-

logued, or the solar system discovered, or any trifle of that kind, it uses up its specialists. But when it wishes anything done which is really serious, it collects twelve of the ordinary men standing round. The same thing was done, if I remember right, by the Founder of Christianity." Gilbert K. Chesterton, *Tremendous Trifles: The Twelve Men* 86–87 (1922).

*Delp v. Itmann Coal Co.*, 176 W.Va. 252, 256, 342 S.E.2d 219, 223 (1986) (McGraw, J., dissenting) (alteration in original).[5] In the case before us, the important matter of liability for Mrs. Mallet's injuries was never presented to the jury; the old scheme served its purpose in limiting juror discretion, effectively eliminating the jury entirely from the consideration of the case. This is the most pernicious side effect of the common law trichotomy, and it is no longer in step with the times.

We must examine the continuing relevance of the common law trichotomy by viewing it in the context of the time in which it was developed. We must not overlook the fact that some of the hoary and "well-established" principles that held sway at the time the common law categories were introduced in the mid–19th Century included, slavery, *see Dred Scott v. Sandford*, 60 U.S. (19 How.) 393, 15 L.Ed. 691 (1856), and a lack of women's suffrage, *see Minor v. Happersett*, 88 U.S. (21 Wall.) 162, 22 L.Ed. 627 (1874) (confining the right of suffrage to males did not deprive women of property without due process of law), both of which, had they not been abandoned, would, to say the least, have had a negative impact on the recent composition of this Court.

---

**3.** *See* William L. Prosser, *Business Visitors and Invitees*, 26 Minn. L.Rev. 573 (1942).

**4.** *See Nelson v. Freeland*, 349 N.C. 615, 623, 507 S.E.2d 882, 887 (1998); *Recent Developments: Torts—Abrogation of Common–Law Entrant Classes of Trespasser, Licensee, and Invitee*, 25 Vand. L.Rev. 623, 624 (1972).

**5.** In fact, we have even gone so far as to hold that complex and confusing legal determinations should always be submitted to a jury to ensure that a common-sense result may obtain. Although included in a discussion of jury nullification, which is not before us in this case, we have

noted that, in some instances where old rules create unexpected consequences, it is better to let a jury consider the matter:

> Consequently, we would suggest that when a civil case involves law that is sufficiently obscure, tenuous and convoluted that a reasonable person could find it surprising, a court may submit the matter to a jury in order to guarantee that the judgment accords with the community's sense of moral probity.

*State v. Morgan Stanley & Co., Inc.* 194 W.Va. 163, 174–175, 459 S.E.2d 906, 917–918 (1995).

Justice Starcher, joined by Justice Workman, recognized in their concurrence in *Self v. Queen* that many "established" rules must give way as society progresses:

> When Justice Oliver Wendell Holmes spoke of "fixed and uniform standards of external conduct" in his 1881 lecture series (now found in *The Common Law* (1909)), we must keep in mind that Holmes was writing in a time when the harsh rules of contributory negligence, assumption of the risk, and the fellow-servant doctrine were taking root in the law. These rules, which were once new, shiny principles designed to immunize entrepreneurs and businesses from liability at a time of early industrialization, have since weathered and fallen in the face of time, reason, and a growing intolerance for human suffering that has accompanied the post-industrial era. *See Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979) (abolishing contributory negligence rule and adopting modified comparative negligence principles); *King v. Kayak Mfg. Corp.*, 182 W.Va. 276, 387 S.E.2d 511 (1989) (abolishing assumption of risk and adopting comparative assumption of risk); W. Va.Code, 23–1–1, *et seq.* (abrogating fellow-servant doctrine by providing workers' compensation benefits to workers injured in the course of and as a result of their employment, including injuries by fellow employees).

199 W.Va. at 641, 487 S.E.2d at 299 (Starcher, J., concurring).[6] The outmoded distinction between invitees is just the sort of principle which, though perhaps once an accurate reflection of society's values, no longer comports with our notions of fairness, and for that reason should be abandoned.

## C.

### *Problems Inherent in the Old Scheme*

Courts, in their efforts to distinguish between licensees and invitees, have felled whole forests and sacrificed them in an often vain attempt to explain the difference. These efforts have resulted in some opinions that strain the credulity of an honest observer. Courts on both sides of the Atlantic have pointed out the confusing complexities encountered when applying the common law classifications:

> "A canvasser who comes on your premises without your consent is a trespasser. Once he has your consent, he is a licensee. Not until you do business with him is he an invitee. Even when you have done business with him, it seems rather strange that your duty towards him should be different when he comes up to your door from what it is when he goes away. Does he change his colour in the middle of the conversation? What is the position when you discuss business with him and it comes to nothing? No confident answer can be given to these questions. Such is the morass into which the law has floundered in trying to distinguish between licensees and invitees."

*Mariorenzi v. Joseph DiPonte, Inc.*, 114 R.I. 294, 306 n. 4, 333 A.2d 127, 133 n. 4 (1975) (abolishing distinctions between trespasser, licensee, and invitee) (quoting *Dunster v. Abbot*, 2 All E.R. 1572, 1574 (C.A.1953) (Eng.)).

Quite often, the facts of a particular premises liability case will require a departure from Aristotelian logic in its search for common sense realism. The Indiana Court of Appeals demonstrated the mental gymnastics sometimes necessary to hold onto the old distinction in *Markle v. Hacienda Mexican Restaurant*, 570 N.E.2d 969 (Ind.Ct.App. 1991). In *Markle*, the plaintiff decided to eat at a restaurant, but upon driving into the strip mall parking lot where the restaurant was located, stopped when he saw a friend.

---

**6.** Another such "respected" doctrine provided little or no recovery for wrongful death under the common law, which was not completely abandoned in this jurisdiction until 1976. *See generally Bond v. City of Huntington*, 166 W.Va. 581, 276 S.E.2d 539 (1981). West Virginia College of Law Professor Thomas Cady, by whom many West Virginia practitioners were first introduced to the subject of torts, explained to his students that before our law on wrongful death caught up with modern reality, upon running over and injuring someone with a car, one was well advised to back up and run over the poor unfortunate again, ensuring his demise, since a tortfeasor faced greater liability for injury than for a death. This is the sort of illogical, counterintuitive outcome that we seek to prevent with our holding in this case.

He got out of his car to transfer an item to the friend's car, and was injured when he stepped into a pothole. Although the court decided that a jury question existed as to the duty the restaurant owed the plaintiff, they found necessary the following exercise in arcane logic:

> We would reach this same result if, for instance, Markle was discussing business with an associate while eating dinner at the restaurant and injured himself in the same parking lot by stepping into the same chuckhole when going out to his car for some papers to use in the discussion. One could say that Markle stepped out of his role as an invitee—although briefly—by leaving the restaurant to get the papers. However, it is also reasonable that the owners could anticipate patrons would meet to discuss business over dinner. Thus, the question of whether the patron who has left the restaurant to get some papers from his car has stepped out of his role as invitee is one properly left to the trier of fact. Likewise, the question of whether the Shopping Center could have anticipated that Markle—or any other customer—would transact business in the parking lot is one properly left to the trier of fact.

*Markle,* 570 N.E.2d at 975 n. 2. A search of other jurisdictions reveals case after case

where a court, bound by the old, common law categories, is forced to ask the wrong question.[7]

The question in instances such as this should not be, "was the plaintiff emblazoned with the magic letters 'L' or 'I' at the moment of injury?," but rather "was the parking lot safe?" Or, alternatively, "did the landowner exercise reasonable care under the circumstances, to ensure that the parking lot was safe for a reasonably foreseeable event, namely, that somebody might walk across it?"[8] Framing the question in this manner is important, because it recognizes that neither landowners nor entrants make decisions with these archaic distinctions in mind.

Justice Starcher underlined this discord between modern expectations and ancient rules in his concurrence to *Self v. Queen:*

> For example, if I have a yard sale to get rid of junk accumulating in my garage, and a neighbor comes into my garage to make a purchase, the neighbor is a business invitee. I owe the neighbor a duty of due care, and if the neighbor, exercising due care, gets hurt tripping over dangerous tools I carelessly forgot to remove from the walkway, I may be held responsible. But if that same neighbor is coming intending to visit me, as he regularly does upon my standing invitation, and trips over

---

7. For additional cases with tortured logic, see *Franconia Assoc. v. Clark,* 250 Va. 444, 463 S.E.2d 670 (1995) (considering whether mall employee lost status as an invitee by attempting to stop a robber); *Lakeview Assoc., Ltd. v. Maes,* 907 P.2d 580 (Colo.1995) (discussing whether tenant, who paid rent but happened to not own a car, was invitee or licensee when she fell while walking across the parking lot of an apartment complex); *Peterson v. Romine,* 131 Idaho 537, 960 P.2d 1266 (1998) (considering whether plaintiff who parked in downtown parking lot provided for shoppers, but who shopped at an adjacent but unaffiliated store, was therefore not a business invitee when she was injured by stepping into a pothole); and *Gladon v. Greater Cleveland Reg'l Transit Auth.,* 75 Ohio St.3d 312, 662 N.E.2d 287 (1996) (questioning whether fare-paying customer of subway system, who was assaulted and thrown onto tracks by third parties upon exiting train, was still an invitee when left lying on tracks and struck by train).

8. The Supreme Court of North Carolina offered the following puzzle:

Consider, for example, the following scenario: A real-estate agent trespasses onto another's land to determine the value of property adjoining that which he is trying to sell; the real-estate agent is discovered by the landowner, and the two men engage in a business conversation with respect to the landowner's willingness to sell his property; after completing the business conversation, the two men realize that they went to the same college and have a nostalgic conversation about school while the landowner walks with the man for one acre until they get to the edge of the property; lastly, the two men stand on the property's edge and speak for another ten minutes about school. If the real-estate agent was injured while they were walking off the property, what is his classification? Surely he is no longer a trespasser, but did his status change from invitee to licensee once the business conversation ended? What if he was [sic] hurt while the two men were talking at the property's edge? Does it matter how long they were talking? *Nelson v. Freeland,* 349 N.C. 615, 627, 507 S.E.2d 882, 889–90 (1998).

the same tools, I won't be liable because he is a licensee and I owe him no duty. As a licensee, he comes "upon the premises subject to all the dangers attending such [existing] conditions." *Cavender v. Fouty*, 195 W.Va. 94, 98, 464 S.E.2d 736, 740 (1995) (quoting Syllabus, *Hamilton v. Brown*, 157 W.Va. 910, 207 S.E.2d 923 (1974)). This is silly. No one declines to clean the garage, shovel snow off a sidewalk, or fill in potholes in a yard with the licensee-invitee rule in mind.

199 W.Va. at 643, 487 S.E.2d at 301 (Starcher J., concurring). Clearly, the average person paying premiums for a homeowners policy would expect a friend or loved one to be covered in any situation that the mailman would be covered. If we wish for our law to be predictable, and we do, then we have a duty to shape it in such a way that it meshes with the general, reasonable assumptions that people make in their daily lives. Because the common law distinction between invitee and licensee does not meet that standard, it should be discarded.

### D.

#### The Modern Trend

A growing number of courts have taken Occam's Razor to this problem, in search for a simpler and more predictable rule. Nearly 40 years ago, the Supreme Court of the United States declined to apply the common law categories to admiralty law, and identified the conflict between a feudally-derived liability standard and modern tort theory:

> The distinctions which the common law draws between licensee and invitee were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism. In an effort to do justice in an industrialized urban society, with its complex economic and individual relationships, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with hesitation, towards "imposing on owners and occupiers a single duty of reasonable care in all the circumstances."

*Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630–31, 79 S.Ct. 406, 410, 3 L.Ed.2d 550, 554–55 (1959) (footnotes omitted). Clearly the justices underestimated the degree of hesitation, but today we do our part by wading out of the "semantic morass."

The Supreme Court's opinion in *Kermarec* paralleled the logic of the English Parliament, which two years earlier passed the Occupiers Liability Act, 5 & 6 Eliz. 2, ch. 31 (1957) (Eng.), abolishing the distinction between licensees, invitees, and so-called contractual visitors. Before so doing, the Lord High Chancellor of Great Britain appointed a committee to determine the need for reform, if any. The committee reported that:

> We think ... that the existing distinction between invitees and licensees based on the presence or absence of some material interest on the part of the occupier, or alternatively, on some material interest common to occupier and visitor, is untenable as a rational ground for fixing the occupier with a higher duty of care towards the former than towards the latter .... Where, on the facts of the particular case, an occupier has been culpably careless and his visitor has been thereby injured, the courts have usually contrived to fix him with liability, and conversely have been able to absolve the occupier in cases where the accident could not, in popular language, fairly be said to have been his fault. But this has been done in spite of, rather than with the assistance of, the categories, which, as it seems to us, tend to embarrass justice by requiring what is essentially a question of fact to be determined by reference to an artificial and irrelevant rule of law.

Law Reform Committee, Third Report, Cmd. 9305 at 31 (1954), *quoted in* Charles P. Drib-

ben, Comment, *The Outmoded Distinction Between Licensees and Invitees*, 22 Mo. L.Rev. 186, 194–95 (1957). Not lost upon this Court is the irony that we, who inherited this system from the Mother country, still cling to it when those who originally foisted it upon us have forsworn its use.

Soon after the opinion in *Kermarec*, several states abandoned the old scheme, starting with California in *Rowland v. Christian*, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968). Over 30 years ago, the California court realized that the old classifications were outmoded:

> Complexity can be borne and confusion remedied where the underlying principles governing liability are based upon proper considerations. Whatever may have been the historical justifications for the common law distinctions, it is clear that those distinctions are not justified in the light of our modern society and that the complexity and confusion which [sic] has arisen is not due to difficulty in applying the original common law rules—they are all to easy to apply in their original formulation—but is due to the attempts to apply just rules in

our modern society within the ancient terminology.

*Rowland*, 69 Cal.2d at 117, 70 Cal.Rptr. at 103, 443 P.2d. at 567. The *Rowland* court could see that application of the old distinction in premises liability cases often yields a result that seems unjust by the standards of today, especially when viewed in light of the general principles of negligence that we employ in other tort cases.

Broad generalizations about the state of premises liability law in other jurisdictions are always subject to caveats and limitations. Several states have special rules for invited social guests; others limit landowner liability via recreational use statutes, or employ a distinction between "active" and "passive" negligence. Having said that, our research reveals that at least 25 jurisdictions have abolished, or largely abandoned the licensee/invitee distinction. Among these 25 jurisdictions that have broken with past tradition, at least 17 have eliminated or fundamentally altered the distinction.[9] Another eight of the 25 have eliminated even the trespasser distinction.[10] And, of those re-

9. **Alaska**, *Webb v. City and Borough of Sitka*, 561 P.2d 731 (Alaska 1977); *University of Alaska v. Shanti*, 835 P.2d 1225 (Alaska 1992); *Arctic Tug & Barge, Inc. v. Raleigh, Schwarz & Powell*, 956 P.2d 1199 (Alaska 1998); **Florida**, *Wood v. Camp*, 284 So.2d 691 (Fla.1973) (creating category of "invited licensee" for social guests); *Bishop v. First Nat'l Bank of Florida, Inc.*, 609 So.2d 722 (Fla.Dist.Ct.App.1992); **Illinois**, *Keller by Keller v. Mols*, 129 Ill.App.3d 208, 84 Ill.Dec. 411, 472 N.E.2d 161 (1984) (abolishing distinction with respect to child entrants), *superseded by statute*, 740 Ill. Comp. Stat. Ann. 130/1 to 130/4 (West 1993) (abolishing common law distinction between invitees and licensees, and imposing duty of reasonable care under the circumstances); **Iowa**, *Sheets v. Ritt, Ritt & Ritt, Inc.*, 581 N.W.2d 602 (Iowa, 1998); **Kansas**, *Jones v. Hansen*, 254 Kan. 499, 867 P.2d 303 (1994); *Gragg v. Wichita State Univ.*, 261 Kan. 1037, 934 P.2d 121 (1997); **Maine**, *Poulin v. Colby College*, 402 A.2d 846 (Me.1979); *Dumont v. Shaw's Supermarkets, Inc.*, 664 A.2d 846 (Me.1995); **Massachusetts**, *Mounsey v. Ellard*, 363 Mass. 693, 297 N.E.2d 43 (1973); *Aylward v. McCloskey*, 412 Mass. 77, 587 N.E.2d 228 (1992); **Minnesota**, *Peterson v. Balach*, 294 Minn. 161, 199 N.W.2d 639 (1972); *Otto v. City of St. Paul*, 460 N.W.2d 359 (Minn. Ct.App.1990); **Nebraska**, *Heins v. Webster Co.*, 250 Neb. 750, 552 N.W.2d 51 (1996); **New Mexico**, *Ford v. Board of County Comm'rs of County of Dona Ana*, 118 N.M. 134, 879 P.2d 766 (1994);

**North Carolina**, *Nelson v. Freeland*, 349 N.C. 615, 507 S.E.2d 882 (1998); **North Dakota**, *O'Leary v. Coenen*, 251 N.W.2d 746 (N.D.1977); *Sternberger v. City of Williston*, 556 N.W.2d 288 (N.D.1996) (noting separate duty toward trespassers); **Oregon**, *Ragnone v. Portland School Dist.*, 291 Or. 617, 633 P.2d 1287 (1981); *but see Nightingale v. Jeffreys*, 124 Or.App. 384, 862 P.2d 589 (1993) (court unwilling to totally eliminate distinction between business invitees and social guests); **Rhode Island**, *Mariorenzi v. Joseph DiPonte, Inc.*, 114 R.I. 294, 333 A.2d 127 (1975); *but see Tantimonico v. Allendale Mut. Ins. Co.*, 637 A.2d 1056 (R.I.1994) (restoring status category of trespasser); **Tennessee**, *Hudson v. Gaitan*, 675 S.W.2d 699 (Tenn.1984); *abrogated on other grounds by, McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn.1992); *Carson v. Headrick*, 900 S.W.2d 685, 688 (Tenn.1995); **Wisconsin**, *Antoniewicz v. Reszcynski*, 70 Wis.2d 836, 236 N.W.2d 1 (1975); *see also Rockweit by Donohue v. Senecal*, 197 Wis.2d 409, 541 N.W.2d 742, 747 (1995); **Wyoming**, *Clarke v. Beckwith*, 858 P.2d 293 (Wyo.1993).

10. **California**, *Rowland v. Christian*, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968); *Calvillo–Silva v. Home Grocery*, 19 Cal.4th 714, 80 Cal.Rptr.2d 506, 968 P.2d 65 (1998) (discussing statute granting landowner immunity from liability if trespasser injured while committing one of several listed felonies); **District of Columbia**,

taining the old scheme, judges in at least five of those states have authored vigorous dissents or concurrences arguing for change.[11]

A look at some of these cases provides an example of the logic that persuades us to join the modern trend.[12] In a recent Nebraska case, a father visited his daughter, who worked at a hospital, and injured his back when he slipped on snow-covered stairs as he left the building. The lower court held that, because the father was visiting the daughter, he was a licensee and could not recover in a suit against the hospital. The Supreme Court of Nebraska recognized this absurd result:

> When he was injured, Heins was exiting a county hospital, using the main entrance to the hospital, over the lunch hour. If Heins had been on the hospital premises to visit a patient or purchase a soft drink from a vending machine, he could have been classified as an invitee.... However, he came to visit his daughter and was denied recovery as a matter of law.
>
> Thus Heins was denied the possibility of recovering under present law, merely because on this trip to the hospital he happened to be a licensee rather than an invitee. In the instant case, the hospital would undergo no additional burden in exercising reasonable care for a social visitor

such as Heins, because it had the duty to exercise reasonable care for its invitees. A patient visitor could have used the same front entrance at which Heins fell and would have been able to maintain a negligence action; however, Heins has been denied the opportunity to recover merely because of his status at the time of the fall.

*Heins v. Webster County,* 250 Neb. 750, 759–60, 552 N.W.2d 51, 56 (1996) (citation omitted). The *Heins* court perceived the obvious question, "did the hospital exercise reasonable care under the circumstances?" The court went on to abolish the common law categories: "We conclude that we should eliminate the distinction between licensees and invitees by requiring a standard of reasonable care for all lawful visitors." *Id.* at 761, 552 N.W.2d at 57.

Another recent case in which a court abandoned the old scheme is *Nelson v. Freeland,* 349 N.C. 615, 507 S.E.2d 882 (1998). In *Nelson,* Mr. Freeland requested that his friend Mr. Nelson pick him up at his home for a business meeting the two were going to attend. In doing so, Mr. Nelson tripped over a stick Mr. Freeland had left lying on his porch. Mr. Freeland won summary judgment, which Mr. Nelson appealed. After a lengthy, exhaustive, and well-written analysis of the history of the common law trichotomy,

---

*Smith v. Arbaugh's Restaurant, Inc.,* 469 F.2d 97 (D.C.Cir.1972), *cert. denied,* 412 U.S. 939, 93 S.Ct. 2774, 37 L.Ed.2d 399 (1973); *Sandoe v. Lefta Assoc.,* 551 A.2d 76 (D.C.1988); **Hawaii,** *Pickard v. City & County of Honolulu,* 51 Haw. 134, 452 P.2d 445 (1969); *Doe v. Grosvenor Properties (Hawaii) Ltd.,* 73 Haw. 158, 829 P.2d 512 (1992); **Louisiana,** *Cates v. Beauregard Elec. Coop., Inc.,* 328 So.2d 367 (La.1976); *Wiggins on Behalf of Wiggins v. Ledet,* 643 So.2d 797 (La. App.1994); **Montana,** *Limberhand v. Big Ditch Co.,* 218 Mont. 132, 706 P.2d 491 (1985) (property owners held by statute to standard of "ordinary care"); **Nevada,** *Moody v. Manny's Auto Repair,* 110 Nev. 320, 871 P.2d 935 (1994) (landowners are "held to the general duty of reasonable care"); *see also Wiley v. Redd,* 110 Nev. 1310, 885 P.2d 592 (1994) (*Moody* partially superseded by statutory "fire-fighter's rule," limiting liability for injuries suffered by safety officers); **New Hampshire,** *Ouellette v. Blanchard,* 116 N.H. 552, 364 A.2d 631 (1976) ("liability is ordinarily imposed upon persons for injuries caused by their failure to exercise reasonable care under all the circumstances"); *Caliri v.*

*State Dep't of Transp.,* 136 N.H. 606, 620 A.2d 1028 (1993); **New York,** *Basso v. Miller,* 40 N.Y.2d 233, 386 N.Y.S.2d 564, 352 N.E.2d 868 (1976); *Bethel v. New York City Transit Auth.,* 92 N.Y.2d 348, 681 N.Y.S.2d 201, 703 N.E.2d 1214 (1998).

11. **Arizona,** *Shaw v. Petersen,* 169 Ariz. 559, 821 P.2d 220 (Ariz.Ct.App.1991); **Kentucky,** *Kirschner v. Louisville Gas & Elec. Co., Inc.,* 743 S.W.2d 840 (Ky.1988); **Mississippi,** *Little by Little v. Bell,* 719 So.2d 757 (Miss.1998); **New Jersey,** *Vega by Muniz v. Piedilato,* 154 N.J. 496, 713 A.2d 442 (1998); **South Dakota,** *Musch v. H–D Elec. Co-op.,* 460 N.W.2d 149 (S.D.1990).

12. The numbers cited above are approximate, as one could argue that Indiana has also abandoned the invitee/licensee. *See Markle v. Hacienda Mexican Restaurant,* 570 N.E.2d 969 (Ind.Ct.App. 1991) (indicating that status of social guests and "public invitees" equal to that of invitees); *see also Jump v. Bank of Versailles,* 586 N.E.2d 873 (Ind.Ct.App.1992); *Civils v. Stucker,* 705 N.E.2d 524 (Ind.Ct.App.1999).

the North Carolina Supreme Court abandoned the licensee/invitee distinction:

> Given the numerous advantages associated with abolishing the trichotomy, this Court concludes that we should eliminate the distinction between licensees and invitees by requiring a standard of reasonable care toward all lawful visitors. Adoptions of a true negligence standard eliminates the complex, confusing, and unpredictable state of premises-liability law and replaces it with a rule which forces the jury's attention upon the pertinent issue of whether the landowner acted as a reasonable person would under the circumstances.

*Nelson,* 349 N.C. at 631, 507 S.E.2d at 892.

Some would argue, and indeed this Court has stated in the past,[13] that the strength of the old system is that it engenders predictability. We are no longer persuaded by this argument. As we noted above, the average person has no idea that such a rule exists. Indeed, in situations such as the case before us, homeowners would probably imagine that if anyone is entitled to protection on their property (and coverage under a homeowners policy), surely their friends and loved ones would qualify. In fact, it is counterintuitive to most lay persons, and many a law student, that those closest to us are not afforded the same protection the law provides to the meter reader or the paper boy. Complicating this confusion among property owners is the fact that an entrant can cascade chameleon-like through the various "colors" of entrant status, from trespasser to licensee to invitee and back, in the course of a single visit.[14]

### E.

### A Standard Both New and Old

■ Today we hold that the common law distinction between licensees and invitees is hereby abolished; landowners or possessors now owe any non-trespassing entrant a duty of reasonable care under the circumstances. We retain our traditional rule with regard to a trespasser, that being that a landowner or possessor need only refrain from willful or wanton injury. Though our decision might seem a radical departure from past cases, in its basic philosophy it is not.

■■ We have held since the 19th Century that: "Negligence is the violation of the duty of taking care under the given circumstances. It is not absolute, but is always relative to some circumstances of time, place, manner, or person." Syl. pt. 1, *Dicken v. Liverpool Salt & Coal Co.,* 41 W.Va. 511, 23 S.E. 582 (1895). Although before today we have allowed the old labels to limit a court's examination of a negligent act, we have recognized that the foreseeability of an injury is dispositive of the duty owed:

> The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?

Syl. pt. 3, *Sewell v. Gregory,* 179 W.Va. 585, 371 S.E.2d 82 (1988); *see Robertson v. LeMaster,* 171 W.Va. 607, 612, 301 S.E.2d 563, 568 (1983). In so holding in *Sewell,* we were in accord with Justice Cardozo's celebrated maxim: "The risk reasonably to be perceived defines the duty to be obeyed . . . ." *Palsgraf v. Long Island R. Co.,* 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928).

■ We are quick to recognize, however, that foreseeability is not all that the trier of fact must consider when deciding if a given defendant owed a duty to a given plaintiff,

---

**13.** *See Self v. Queen,* 199 W.Va. at 640–41, 487 S.E.2d at 298–99.

**14.** Scholars studying the trichotomy have made the same observation:

> Further complicating matters is that, as an entrant moves through a person's property, his status can change from an invitee, to a licensee, and finally, to a trespasser, in only one visit, even if the initial purpose of the engagement was for the benefit of the landowner.

> Not only is this metamorphosis difficult for landowners and entrants to track, but it also creates confusion and uncertainty for judges trying to determine the requisite standard of care upon which the jury is to assess liability.

John Ketchum, *Missouri Declines an Invitation to Join the Twentieth Century: Preservation of the Licensee–Invitee Distinction in* Carter v. Kinney, 64 UMKC L.Rev. 393, 427–28 (1995) (citations omitted).

even in the absence of the licensee/invitee distinction:

> While the existence of a duty is defined in terms of foreseeability, it also involves policy considerations including "the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant."

*Harris v. R.A. Martin, Inc.*, 204 W.Va. 397, 401, 513 S.E.2d 170, 174 (1998) (per curiam) (quoting *Robertson v. LeMaster*, 171 W.Va. at 611, 301 S.E.2d at 567). Some factors that other jurisdictions have included in the analysis of whether a landowner or occupier has exercised reasonable care under the circumstances include the seriousness of an injury, *see O'Leary v. Coenen*, 251 N.W.2d 746, 751 (N.D.1977), the time, manner and circumstances under which the injured party entered the premises, and the normal use made of the premises, *see Sheets v. Ritt, Ritt & Ritt, Inc.*, 581 N.W.2d 602, 606 (1998); *Heins v. Webster Co.*, 250 Neb. at 760–61, 552 N.W.2d at 57.

■ We hold that, in determining whether a defendant in a premises liability case met his or her burden of reasonable care under the circumstances to all non-trespassing entrants, the trier of fact must consider (1) the foreseeability that an injury might occur; (2) the severity of injury; (3) the time, manner and circumstances under which the injured party entered the premises; (4) the normal or expected use made of the premises; and (5) the magnitude of the burden placed upon the defendant to guard against injury.[15]

While we have long purported to follow the licensee/invitee/trespasser trichotomy without deviation, we have been willing, when the facts demanded it, to carve exceptions. The most obvious example is the exception created for children who were not invitees when injured:

Although the Attractive Nuisance Doctrine is not recognized in this State, this Court has adopted a rule quite similar to that Doctrine and has held that where a dangerous instrumentality or condition exists at a place frequented by children who thereby suffer injury, the parties responsible for such dangerous condition may be held liable for such injury if they knew, or should have known, of the dangerous condition and that children frequented the dangerous premises either for pleasure or out of curiosity.

*Sutton v. Monongahela Power Co.*, 151 W.Va. 961, 971, 158 S.E.2d 98, 104 (1967). *Accord Hatten v. Mason Realty Co.*, 148 W.Va. 380, 135 S.E.2d 236 (1964); *Brown v. Carvill*, —— W.Va. ——, —— S.E.2d ——, 1998 WL 394654 slip op. (No. 23941, July 16, 1998). This rule focuses, not upon the child's entrant classification, but upon the foreseeability of the harm. Although we do not today alter our treatment of the common law category of trespasser, the logic in *Sutton* is in harmony with our decision in the instant case.

But our focus has not always been so sharp. For many years, the licensee/invitee distinction has distracted us when examining a given negligent act, and forced us to ask the extraneous question of "who was injured?" before asking "what was the risk reasonably to be perceived?" For example, the holding in *Self v. Queen, supra*, precluded recovery by a woman who was injured when she stepped into a hole in her mother's yard. Our analysis centered on the woman's entrant classification, but never reached the question of the risk reasonably to be perceived, presented by the presence of the hole in the yard. Thus, the classifications have acted like a filter; when trying to determine if a defendant has acted negligently, the important question of foreseeability we have seen through a glass, darkly. By removing

---

15. We are mindful of Justice Maynard's recent admonition:

> Courts have traditionally recognized that, "[a] line must be drawn between the competing policy considerations of providing a remedy to everyone who is injured and of extending exposure to tort liability almost without limit. It is always tempting to impose new duties and, concomitantly, liabilities, regardless of the economic and social burden. Thus, the courts have generally recognized that public policy and social considerations, as well as foreseeability, are important factors in determining whether a duty will be held to exist in a particular situation."

*Harris v. R.A. Martin, Inc.*, 204 W.Va. at 403, 513 S.E.2d at 176 (Maynard, J., dissenting) (quoting 57A Am.Jur.2d *Negligence* § 87, at 143 (1989)).

the invitee/licensee distinction, we are now able to see the question of foreseeability, face to face.

## IV.

## CONCLUSION

We hold that the invitee/licensee distinction is abandoned. Our cases that rely upon it, including *Puffer v. Hub Cigar Store,* 140 W.Va. 327, 84 S.E.2d 145 (1954), *Hamilton v. Brown,* 157 W.Va. 910, 207 S.E.2d 923 (1974), *Miller v. Monongahela Power Co.,* 184 W.Va. 663, 403 S.E.2d 406 (1991), and their progeny, are overruled to the extent that they rely upon an invitee/licensee distinction. In light of these developments, Mr. and Mrs. Mallet should be afforded another attempt at recovery, and all similar claims, in the future, should be adjudicated under the new standards we have articulated. Accordingly, the lower court's grant of summary judgment is reversed and this case is remanded for proceedings consistent with this opinion.

Reversed and remanded.