OPINION OF THE COURT
CHAGARES, Circuit Judge.
In this personal injury action, plaintiff Kenneth Dorney appeals from an order granting a motion for summary judgment in favor of defendants Dominic and Diana Mammi. We will affirm.
I.
Because we write solely for the parties’ benefit, we recite only the essential facts. Dorney, a New Jersey citizen, visited the defendants at their West Virginia residence for a few days in October 2004. During the visit, Dominic Mammi asked Dorney several times to help him trim some branches on a tree located in his yard. Dorney ultimately agreed, albeit reluctantly. The two went into the garage and retrieved a double-extended aluminum ladder, an electric chainsaw to trim the branches, and a generator to power the chainsaw. Dominic extended the ladder its entire length, and then he and Dorney placed it against the tree. The base of the ladder was positioned approximately six feet away from the base of the tree trunk, and the top of the ladder rested on the first branch that Dominic wanted trimmed. Dorney tied a piece of rope to the chainsaw and then began to climb. When he reached the branch — about 18-25 feet above the ground — he pulled the chainsaw up with the rope. “Split seconds” after Dorney began to trim the branch with his right hand, the ladder twisted and ultimately threw him to the ground, breaking his hip and arm. Because he was looking at the branch at the time the ladder twisted, Dorney does not know whether Dominic was holding the ladder, as he had requested. Dominic testified that he had indeed been holding the ladder until it was knocked from his hands. Dominic surmised that when Dorney began to cut the branch (which had extended from the tree approximately 20-25 feet), it “whipped the stump part back [and] hit the ladder,” throwing Dorney off. But Dominic, too, had averted his eyes to shield them from sawdust, so he did not actually see the branch hit the ladder. There were no eyewitnesses to the accident.
In September 2006, Dorney filed suit against the defendants in the District Court,[1] asserting two negligence claims. After discovery, the defendants moved for summary judgment, which the District Court granted in an opinion and order issued on September 22, 2008. Applying West Virginia negligence principles, the District Court held that the defendants owed no duty to Dorney to protect him against the open and obvious danger that caused his injuries. It reasoned that Dorney’s voluntary decision to climb the ladder and single-handedly trim a tree branch with an electric chainsaw posed such an obvious risk that the defendants were under no compulsion of law to prevent the harm that befell him. The District Court then held that in any event, Dorney had produced no evidence that Dominic acted negligently, that any of the equipment was defective, or that any of Dominic’s actions proximately caused Dorney’s injuries. Summarizing the record, the District Court stated that “[p]laintiff simply does not know why the ladder fell. As plaintiff testified, ‘he’s down there and I’m up *651 here.’ ” Op. at 15. This timely appeal followed.
II.
The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332; we have appellate jurisdiction pursuant to 28 U.S.C. §§ 636(c)(3) and 1291. Our review of the District Court’s grant of summary judgment is plenary, and we apply the same legal standard as it should have. Vitalo v. Cabot Corp., 399 F.3d 536, 542 (3d Cir.2005). The defendants are entitled to summary judgment “if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that [defendants are] entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c). In conducting our analysis, we must view the record in the light most favorable to Dorney, the non-movant, and must draw all reasonable inferences in his favor. See Vitalo, 399 F.3d at 542; Fed.R.Civ.P. 56(c). To defeat summary judgment, however, Dorney must “produce admissible evidence containing ‘specific facts showing that there is a genuine issue for trial.’ ” Vitalo, 399 F.3d at 542 (quoting Fed.R.Civ.P. 56(e)).
III.
In West Virginia,[2] as in most states, “the mere happening of an accident is legally insufficient to establish liability.” McMillion v. Selman, 193 W.Va. 301, 456 S.E.2d 28, 30 (1995) (discussing Burdette v. Burdette, 147 W.Va. 313, 127 S.E.2d 249 (1962)). Instead, to recover on his negligence claims, Dorney must demonstrate that the defendants owed him a duty of reasonable care, that they breached that duty by acting unreasonably under the circumstances, and that their negligence proximately caused his injuries. Strahin v. Cleavenger, 216 W.Va. 175, 603 S.E.2d 197, 205 (2004). The threshold question, of course, is “whether a duty was owed.” Id. The duty concept is not an “inflexible principle, since it is not absolute, but is always relative to some circumstance of time, place, manner or person.” Id. at 206 (citation and quotation marks omitted). In landowner liability cases, “landowners or possessors ... owe any non-trespassing entrant a duty of reasonable care under the circumstances.” Mallet v. Pickens, 206 W.Va. 145, 522 S.E.2d 436, 446 (1999). More specifically:
The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant’s position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?
Id. But “[t]he duty of reasonable care does not require that the landowner be an insurer” of the entrant’s safety, and if the defendant “is not guilty of actionable negligence or willful or wanton misconduct ... he is not liable for injuries sustained by” the plaintiff. Stevens v. W. Va. Inst. of Tech., 207 W.Va. 370, 532 S.E.2d 639, 643 (1999) (quoting Burdette, 127 S.E.2d at 252). Moreover, “[a] landowner is not required to obviate dangers which are open and obvious, nor to warn [entrants] of such patent hazards.” Alexander v. Curtis, 808 F.2d 337, 339 (4th Cir.1987). “There is no liability for injuries from dangers that are obvious, reasonably appárent, or as well known to the person injured as they are to the owner or occupant.” Id. (quoting Burdette, 127 S.E.2d at 252).
*652 As the District Court recognized, Dorney’s theory of recovery in this case is not altogether clear. See Op. at 11. To the extent Dorney argues that Dominic Mam-mi should have better secured the ladder, devised a safer way for him to trim a tree branch 18-25 feet above the ground, or prevented him from climbing the ladder entirely, we agree with the District Court that the danger inherent in Dorney’s activity precludes recovery.
In Burdette, the Supreme Court of Appeals of West Virginia reversed a jury verdict for a plaintiff who had fallen from the top of a ladder on defendant’s property. 127 S.E.2d at 254. There were no defects in the ladder, and the plaintiff had submitted evidence that the bottom of the ladder simply “kicked out” from under him. Id. at 251. The court held that the evidence showed that the risks posed by the ladder were as apparent to the plaintiff as they could have been to the defendant, and reversed the verdict. Id. at 253. In so doing, the court relied on other ladder cases, one of which is remarkably similar to this one. In Velte v. Nichols, 211 Md. 353, 127 A.2d 544, 545 (1956), plaintiff climbed a ladder leaning against a trailer that contained bundles of Christmas trees. After plaintiff reached the top of the ladder — which was resting upon the trunks of the trees — the bottom of the ladder slipped from under him, causing him to fall. Id. The plaintiff later learned that there was ice under the bottom of the ladder. Id. The Court of Appeals of Maryund reversed a jury verdict in plaintiff’s favor, holding as follows:
In the instant case the ladder was not defective. The inherent danger that the foot of the ladder may slip, when it is leaning against a tailgate or the trunks of trees, was as apparent to the plaintiff as it could have been to the defendants. Yet the plaintiff did not test the stability of the ladder but on his own statement mounted it to the very top, without inspection. As a matter of fact there was no evidence that the defendants knew that there was ice in the street under the ladder. That condition could have been ascertained upon inspection by the plaintiff as well as by the defendants. The defendants were not insurers of their own premises, far less the condition of the street.
Id. at 546. We agree with this reasoning.[3] Allocation of the dangers inherent in Dorney’s chosen activity — climbing a ladder resting upon the very branch he planned to trim, single-handedly, with an electric chainsaw — is properly placed upon him, and him alone. The defendants were in no better position to foresee or prevent the accident arising from Dorney’s ascent, which carried with it open and obvious risks that would be patently apparent to a reasonable person. Indeed, Dorney himself described the risks posed by his venture as “evident.”
Citing no authority, Dorney attempts to distinguish the cases cited by the District Court on the basis that the dangers in those cases were “attenuated to the prop *653 erty.” We do not readily understand this argument, and we reject it in any event. West Virginia case law simply does not condition application of the open-and-obvious-dangers doctrine on the particular relationship of the risks to the physical premises. Dorney has not (nor can he) materially distinguish this case from Burdette, from the ladder cases cited in Burdette, or from any of the other cases cited by the District Court.
Finally, to the extent Dorney advances a theory that Dominic Mammi actually caused the ladder to twist (as opposed to his failure to prevent the ladder from twisting), we find no error in the District Court’s analysis. The only evidence with respect to the cause of the accident came from Dominic Mammi, who testified that the branch Dorney had trimmed “whipped” back and knocked the ladder out from under him. Dorney has posited no contrary evidence shedding additional light on the cause of his fall. We therefore agree with the District Court that the record, viewed in the light most favorable to Dorney, would not permit a rational factfinder to conclude that any of Dominic’s actions fell below a reasonable standard of care or proximately caused Dorney’s injuries. Having failed to set forth any specific facts supporting two critical elements of his negligence claims, Dorney has not met his burden to avoid summary judgment. See Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir.2005) (“While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla.”) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); Fed.R.Civ.P. 56(e).
IV.
For the foregoing reasons, we will affirm the District Court’s order.

. By the parties' consent, this matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). We refer to the Magistrate Judge as the "District Court.”

. Neither parly takes issue with the District Court’s application of West Virginia law. We, too, agree with the District Court's choice of law.

. We recognize, as did the District Court, that Burdette and the cases cited therein were decided long before Mallet, in which the Supreme Court of Appeals of West Virginia abolished the common-law distinctions between invitees, licensees, and trespassers. See Mallet, 522 S.E.2d at 446. Nevertheless, the Supreme Court of Appeals again cited Burdette— in a case decided after Mallet — for the proposition that "[t]he duty of reasonable care does not require that the landowner be an 'insurer of the safety of [the person] present on [the] premises....’” Stevens, 532 S.E.2d at 643 (quoting Burdette, 127 S.E.2d at 252) (first alteration in original). Thus, we do not read Mallet to undermine the well-established doctrine regarding open and obvious dangers.