453 S.E.2d 335

**ESTATE OF Harry Melvin HELMICK, Deceased, by Goldie M. FOX, Executrix of the Estate of Harry Melvin Helmick, Deceased, Plaintiff Below, Appellant,**

v.

**Carl J. MARTIN II; Ace Tank Rental, Inc.; Virgie Wamsley; Hayward Harold Martin; and Dorothy Casada, d/b/a Our Place Diner, Defendants Below and Appellees.**

No. 22043.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 28, 1994.

Decided Dec. 8, 1994.

502

Jonathan E. Turak, Donald M. Kresen, Gold, Khourey & Turak, Moundsville, for appellant.

John E. Busch, Busch & Talbott, Elkins, for appellants Carl J. Martin II and Ace Tank Rental, Inc.

James A. Varner, Catherine D. Munster, McNeer, Highland & McMunn, Clarksburg, for appellants Hayward Harold Martin; Dorothy Casada, d/b/a Our Place Diner.

David A. Sims, Wallace, Harris & Sims, Elkins, for appellant Virgie Wamsley.

Jeffrey L. Robinette, Jackson & Kelly, Morgantown, for State Auto.

PER CURIAM:

This action was brought by the appellant and plaintiff below, the Estate of Harry Melvin Helmick, deceased, by Goldie M. Fox, Executrix, to recover damages for personal injuries and wrongful death resulting from a car accident that occurred after the car in which Mr. Helmick was riding pulled out of the parking lot of Our Place Diner. All the defendants, with the exception of Dorothy Casada, d/b/a Our Place Diner, the appellee and one of the defendants below, reached a settlement with the plaintiff.[1] The plaintiff alleged that the defendant, Dorothy Casada, failed to properly warn of the dangers of the parking lot and failed to correct the hazard. The defendant filed a motion for summary judgment on the ground that she met her duty of care owed to the plaintiff. On May 25, 1993, the Circuit Court of Upshur County granted summary judgment in favor of the defendant and dismissed the case. On appeal the plaintiff contends that the circuit court erred in dismissing the case because material issues of fact remain. We find that the case was properly dismissed, and we affirm the order of the circuit court.

I.

In January of 1989, Harry Melvin Helmick was rendered incompetent following a two car accident. He was a passenger in a car driven by Virgie Wamsley. After Ms.

---

[1]. The action was originally brought against the driver of the truck, Carl J. Martin II; his employer, Ace Tank Rental, Inc.; and the driver of the car, Virgie Wamsley. Carl J. Martin II and Ace Tank Rental, Inc. filed a third-party complaint against the owner of the land on which Our Place Diner was located, Hayward Harold Martin, and the lessee of the premises and operator of the restaurant, Dorothy Casada, d/b/a Our Place Diner.

Wamsley exited the parking lot of Our Place Diner, her car was struck by a truck. The plaintiff filed suit seeking recovery for Mr. Helmick's injuries, alleging that the parking lot of the restaurant, connecting West Virginia Route 20, constituted a hazard. The defendant, Dorothy Casada, operated the diner on the leased premises. The complaint was amended after Mr. Helmick's death.[2]

The sole issue before the circuit court, in hearing arguments for summary judgment, was to determine whether the defendant met her duty of care in regard to the hazard created by the situation of the parking lot.

The facts appearing from the depositions are essentially undisputed. The boundary of the parking lot was an open boundary of approximately 160 feet to West Virginia Route 20. There was insufficient visibility to safely exit from the south end, but it was safe to exit from the north end of the parking lot.

A deposition was taken from a district engineer of the West Virginia Department of Highways. He stated that regulations do not allow unrestricted entry onto the highway for such a large distance. For commercial property, the maximum allowable opening onto the highway is 50 feet. He stated that a sufficient sight distance to exit the lot safely existed only at the north end. Furthermore, he stated that a permit is required for every entry onto a state highway from a driveway or up to a parking lot. No permit was found for Our Place Diner. A permit would not be issued because the driveway did not meet the minimal requirements of the Department of Highways regulations. However, he also admitted that only about fifty percent of driveways that enter state roads within Lewis and Upshur Counties have permits. It would be the responsibility of the owner of the property to secure such a permit.

The evidence from the record shows that the defendant would generally warn customers to exit the parking lot from the north end. She specifically mentioned to Ms. Wamsley, on many occasions, to leave the parking lot from the north end.[3]

Ms. Wamsley and Mr. Helmick would eat at Our Place Diner approximately twice a week. Ms. Wamsley admitted that she was aware, and that she and the defendant had discussed the fact, that it was safer to exit the parking lot from the north end. On the day of the accident, however, she pulled out from the south end and her car was struck by the truck.

In regard to whether the lessee or the lessor had the responsibility to maintain the parking lot, the lease agreement states, in pertinent part:

"(6) Lessee shall maintain and repair, when necessary, the parking lot adjacent to the premises and abutting upon West Virginia Route No. 20 and shall allocate to the lessors four parking spaces for automobiles at the southwestern corner of such lot, without charge, during the term of this lease and any extensions hereof.

.    .    .    .    .

"(8) The lessors, their agents or other representatives, shall have the right to enter into and upon said premises at all reasonable times for the purposes of inspecting the same and making such repairs and alterations as lessors at their sole option may deem necessary including, but not limited to, repairs to the roof, spouting, exterior walls, pathways and sidewalks. Such exterior repairs and maintenance by the lessors shall not include any signs or signboards which shall be solely the responsibility of the lessee."

---

**2.** Following the accident, Mr. Helmick was rendered a quadriplegic. His medical expenses exceeded $500,000. He died approximately sixteen months after the accident due to complications arising from his injuries.

In December of 1992, this Court ruled upon certified questions in this case. In *Estate of Helmick by Fox v. Martin*, 188 W.Va. 559, 563, 425 S.E.2d 235, 239 (1992), we held "that West Virginia Code § 55-7-8 authorizes the dece-

dent's beneficiaries to recover damages for a decedent's pain and suffering incurred between the time of injury and the time of death where the decedent had instituted an action for personal injury prior to his death and the action was revived and amended pursuant to West Virginia Code §§ 55-7-8 and 55-7-6."

**3.** Ms. Wamsley is Ms. Casada's mother.

## II.

■ The issue on appeal is whether summary judgment was appropriate in this case. In Syllabus Point 1 of *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994), we said:

"A circuit court's entry of summary judgment is reviewed *de novo.*"

*See Drewitt v. Pratt,* 999 F.2d 774 (4th Cir. 1993).

■ In hearing arguments for summary judgment, a circuit court should determine "whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 213 (1986). However, the facts must be viewed in the light most favorable to the party opposing the motion. *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992).

The plaintiff alleges that a genuine issue of material fact exists as to whether the defendant was negligent. First, she contends that the defendant failed to provide an adequate warning to Mr. Helmick about the dangers in the parking lot. The plaintiff asserts that the defendant's warnings to Ms. Wamsley did not relieve her of the duty to warn Mr. Helmick. Second, because the lease required her to make repairs, alterations or improvements as were necessary to "comply with and conform to" the rules and regulations of the State of West Virginia, she was required to alter the parking lot to limit the entry way to fifty feet, as required by the Department of Highway regulations.[4]

The defendant replies that the question before the circuit court was merely one of *duty* to an injured party. This determination was a question of law; and, therefore, summary judgment was appropriate based on the facts in the record. The defendant argues that the evidence is uncontroverted that she met her duty of care, as enunciated in *Andrick, supra.*

In *Andrick,* a patron of a restaurant was injured when she fell on uneven pavement in the parking lot. The complaint alleged that the owner of the lot and the lessee failed to maintain the parking lot. It was not clear from the language of the lease if the lessee was responsible for such maintenance. We held that regardless of whether the lessees had the duty to repair the lot, they had the "duty to warn their patrons of any dangerous condition in the parking lot of which they had actual or constructive knowledge." 187 W.Va. at 712, 421 S.E.2d at 253.

The defendant asserts that the evidence is clear she fulfilled her duty to warn. It is undisputed that the person with sole control over the vehicle, Ms. Wamsley, had actual knowledge of the condition of the parking area. Ms. Wamsley was warned of the hazard of the south end of the parking lot while she was in the presence of Mr. Helmick.

Furthermore, the defendant claims she had neither the obligation nor the ability to alter the parking area under state law and under the terms of the lease. The defendant asserts that the Department of Highways regulations regarding driveways apply only to owners, not lessees. Also, the lessee was precluded from erecting a barrier to prevent cars from exiting from the south end of the lot because the area had to be open to accommodate the lessor's parked cars.[5]

■ After framing the parties' arguments above, we begin our analysis by setting forth the general rule contained in Syllabus Point 2 of *Morgan v. Price,* 151 W.Va. 158, 150 S.E.2d 897 (1966):

"The owner or the occupant of premises owes to an invited person the duty to exercise ordinary care to keep and maintain the premises in a reasonably safe condition."

---

4. Paragraph (11) of the lease agreement states: "Lessee will not engage in or permit to be conducted on the premises any unlawful act, business or occupation. Lessee will comply with and conform to, at their own expense, all rules, orders and regulations of any authorized public tribuna, or its officers with regard to the conduct of business at the leased premises. Lessee further covenant that during the term of this lease and any extensions thereof they will not sell or permit to be sold in or on any part of the leased premises any alcoholic beverages of any nature whatsoever, unless fully authorized by United States Government and State of West Virginia laws."

5. *See* paragraph (6) of the lease.

The lessee is not strictly liable for injuries which occur on the property. In Syllabus Point 3 of *McDonald v. University of W. Va. Board of Trustees,* 191 W.Va. 179, 444 S.E.2d 57 (1994), we state:

"'The owner or the occupant of premises used for business purposes is not an insurer of the safety of an invited person present on such premises and, if such owner or occupant is not guilty of negligence or willful or wanton misconduct and no nuisance exists, he is not liable for injuries there sustained by such invited person.' Syllabus point 3, *Puffer v. The Hub Cigar Store, Inc.,* 140 W.Va. 327, 84 S.E.2d 145 (1954)."

In the case at bar, the plaintiff does not allege that the defendant engaged in "willful or wanton misconduct," and does not allege the parking lot created a "nuisance." The case is based on simple negligence. In determining whether the defendant's maintenance of the lot constituted negligence, we agree with the defendant that the standard of care set forth in *Burdette v. Burdette,* 147 W.Va. 313, 318, 127 S.E.2d 249, 252 (1962), is controlling:

"The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal, obvious, or ordinary risks attendant on the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers.... There is no liability for injuries from dangers that are obvious, reasonably apparent, or as well known to the person injured as they are to the owner or occupant."

*See McDonald v. University of W.Va. Board of Trustees, supra.*

█ All the parties recognized the dangers of the parking lot fronting Our Place Diner. The evidence demonstrated that Ms. Wamsley and Mr. Helmick would frequent the restaurant and were aware that it was safer to exit the lot from the north end. The evidence is clear that the dangers of the lot were "as well known to the person injured as they [were] to the owner or occupant." Accordingly, we agree with the circuit court that the defendant is not legally responsible for the accident that occurred after Ms. Wamsley and Mr. Helmick left the diner.

We find that our holding in *Andrick, supra,* therefore, is inapplicable to the case at bar. The situation in *Andrick* involved a hidden danger, while the hazard encountered by the parking lot was open, obvious, and specifically known by the plaintiff. However, given the facts of this case, the defendant's warnings of the danger of the parking lot would nevertheless be sufficient to meet that higher standard of care.

Accordingly, after reviewing the record, we find that the defendant is not liable for the injuries to and subsequent death of Mr. Helmick, and this case was properly dismissed.

### III.

The plaintiff also contends that the circuit court's order entered January 24, 1992, should be reversed. The circuit court held that plaintiff's counsel was required to reimburse defense counsel for attorney's fees, costs, and expenses incurred in attending a deposition in Florida that was cancelled by an expert witness.[6] The evidence shows that the parties arranged to take the deposition of the trucking expert on October 25, 1991, in Melbourne, Florida. On the evening of October 22, 1991, plaintiff's counsel attempted to contact the expert witness and learned that he would be unavailable for the scheduled deposition. Plaintiff's counsel's secretary contacted the office of all opposing counsel two days prior to the deposition and advised them that the deposition was cancelled due to the expert's unavailability.

Defense counsel was in North Carolina interviewing a witness and then proceeded directly to Florida for the scheduled deposition. They did not check the office for messages and did not learn of the cancellation until they appeared prepared to proceed.

---

**6.** $2,500.00.

The plaintiff argues that nothing in the facts surrounding the cancellation indicates bad faith. It was defense counsel's failure to make contact with their office that caused the aggravated costs.

The defendant argues that the circuit court's order was within its discretion and should not be disturbed upon appeal because there was no clear abuse of that discretion.[7] We disagree. We note that this Court "can consider only those matters in the record in determining whether the court abused its discretion." *Evans v. Huntington Publishing Co.*, 168 W.Va. 222, 224, 283 S.E.2d 854, 855 (1981).

■ A hearing on this matter was held on December 13, 1991. The evidence shows that it was, in fact, the expert witness who cancelled the deposition. The fact that he could not attend was not the fault of any party. Plaintiff's counsel in this case did not act in bad faith. He immediately notified defense counsel's office. He did all that he could do to inform defense counsel of the change of plans. It was the responsibility of defense counsel either to ensure that his office informed him of such a change of plans or to contact his office. Because he was not without fault, he should not recover his fees, costs, and expenses in travelling to the city of the cancelled deposition.

This Court is reluctant to intervene with a circuit court's decision of this nature. However, in the interest of fairness, we cannot permit the order below to stand. We believe that the facts surrounding the cancellation of the deposition illustrate that the circuit court's order to sanction the plaintiff's counsel constituted an abuse of discretion. We, therefore, reverse the circuit court's decision on this issue.

#### IV.

For the foregoing reasons, the May 25, 1993, order of the Circuit Court of Upshur County granting summary judgment in favor of the defendant is affirmed. The January 24, 1992, order of the circuit court ordering the plaintiff's counsel to pay defense counsel's attorneys fees, costs, and expenses for attending the cancelled deposition is reversed.

Affirmed, in part, and reversed, in part.

BROTHERTON, C.J., did not participate.

MILLER, Retired J., sitting by temporary assignment.

---

7. The defendant cites Syllabus Point 1 of *Bell v. Inland Mutual Insurance Co.*, 175 W.Va. 165, 332 S.E.2d 127, *cert. denied*, 474 U.S. 936, 106 S.Ct. 299, 88 L.Ed.2d 277 (1985), to support his claim. However, *Bell* concerned a party's failure to obey a court's order to provide discovery. Because that is not the situation in the case at bar, we do not find *Bell* to be controlling. However, we do find the language persuasive in dealing with discovery matters generally.