633 S.E.2d 31

Charles HAWKINS and Sheila Hawkins,
Plaintiffs Below, Appellants

v.

UNITED STATES SPORTS ASSOCIA-
TION, INC., and/or United States Spe-
cialty Sports Association, Inc., Marion
County Board of Education, Marion
County Slow Pitch Softball Association,
Marion County Softball Association,
and City of Fairmont, a Municipal Cor-
poration, Defendants Below, Appellees.

No. 32869.

Supreme Court of Appeals of
West Virginia.

Submitted: April 12, 2006.

Decided: June 15, 2006.

Gregory H. Schillace, Schillace Law Office, Clarksburg, for the Appellants.

Mary H. Sanders, Brian J. Headley, Huddleston Bolen LLP, Charleston, for the Appellees.

PER CURIAM.

This is an appeal by Charles and Sheila Hawkins (hereinafter "Appellants") from a final order of the Circuit Court of Marion County granting summary judgment in favor of the Appellees, United States. Sports Association, Inc., Marion County Slow Pitch Softball Association, Marion County Softball Association, and the City of Fairmont (hereinafter "Appellees"). Although the lower court found that the Appellees, as defendants in the underlying civil action, had a duty of care to provide a safe playing field upon which the Appellant Charles Hawkins played softball, the lower court granted summary judgment to the Appellees based upon the court's conclusion that the Appellants had failed to demonstrate the existence of any genuine issues of material fact. The Appellants contend that elements including negligence, due care, proximate cause, and concurrent negligence should have been permitted to be considered by a jury. Upon thorough review of the record, briefs, and applicable precedent, this Court affirms the lower court's order of summary judgment.

I. Factual and Procedural History

On August 18, 2000, Mr. Hawkins injured his knee on a plastic pipe while sliding toward first base in the third inning of a softball tournament organized and controlled by the Appellees. Mr. Hawkins incurred in excess of $56,000.00 in medical expenses due to that injury. The Appellants filed a civil action against the Appellees, alleging that the Appellees were negligent in their failure to discover the pipe and confirm that the field was safe before allowing Mr. Hawkins to play there.

Significant discovery was undertaken, revealing that the Appellees had prepared the field the night before the softball game and had performed precautionary inspections of the field prior to the competition. Noticeable obstructions were removed from the field. On the morning of the competition, due to rain the prior evening, members of Mr. Hawkins' team used brooms and rakes to further prepare the field. The evidence firmly establishes that no one noticed any type of obstruction on the field during these preparations.

Discovery also indicated that the pipe on which Mr. Hawkins injured his knee was a two-inch diameter PVC pipe located approximately five feet from first base in the base line and was approximately twelve inches long. Discovery revealed that the pipe had been installed in the base line by coaches employed by the Marion County Board of Education [1] in order to serve as an anchor for bases to accommodate different size dimensions for girls' softball. These coaches testified that they had not informed any

1. The Appellants settled with the Marion County Board of Education on October 8, 2003.

member of any Appellee that the pipe had been buried on the field. The parties disagree concerning the issue of what portion of the buried or partially buried pipe might have protruded above ground level at the time of Mr. Hawkins' injury. The parties also disagree regarding whether the pipe was hollow or filled with concrete.

The lower court granted the Appellees' motion for summary judgment on November 19, 2004, finding that none of the Appellees had knowledge of the PVC pipe. Specifically, the lower court order stated that "[n]o witness testified that the [Appellees] acted improperly." The lower court found that the Appellees had fulfilled their duties by taking reasonable steps to ensure a safe playing field and that because the Appellees had no knowledge of the buried PVC pipe, they did not breach their duty by "failing to locate a latent danger." The lower court concluded that because the only individuals with knowledge about the PVC pipe were Marion County Board of Education representatives, "only the Marion County Board of Education is legally responsible for the [Appellants'] injuries."

## II. Standard of Review

 Summary judgment is required by Rule 56 of the West Virginia Rules of Civil Procedure when the record reveals that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." W.Va.R.Civ. Pro. 56(c). This Court has consistently applied a *de novo* standard of review in evaluating a lower court's entry of summary judgment. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*"). Syllabus point four of *Painter* also instructs as follows:

Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a suf-

ficient showing on an essential element of the case that it has the burden to prove.

 In syllabus point four of *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), this Court explained: "If there is no genuine issue as to any material fact summary judgment should be granted but such judgment must be denied if there is a genuine issue as to a material fact." In determining whether a genuine issue of material fact exists, this Court construes the facts in the light most favorable to the party against whom summary judgment was granted. *Masinter v. WEBCO Co.*, 164 W.Va. 241, 242, 262 S.E.2d 433, 435 (1980); *Alpine Prop. Owners Assn. v. Mountaintop Dev. Co.*, 179 W.Va. 12, 17, 365 S.E.2d 57, 62 (1987). Syllabus point five of *Jividen v. Law*, 194 W.Va. 705, 461 S.E.2d 451 (1995), defines "genuine issue" in the following manner:

Roughly stated, a "genuine issue" for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed "material" facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law.

## III. Discussion

### A. The Precedent

 This Court has invariably maintained that the owner of premises upon which an injury occurs is not to be considered an insurer of the safety of an invited person present upon such premises. In syllabus point three of *Puffer v. The Hub Cigar Store, Inc.*, 140 W.Va. 327, 84 S.E.2d 145 (1954), *overruled on other grounds by Mallet v. Pickens*, 206 W.Va. 145, 522 S.E.2d 436 (1999),[2] this Court explained as follows:

---

2. The *Mallet* Court, discussed subsequently in this opinion, abolished the common law distinction between licensees and invitees, concluding that landowners owe any non-trespassing entrant

a duty of reasonable care under the circumstances. 206 W.Va. at 156–57, 522 S.E.2d at 447–48.

The owner or the occupant of premises used for business purposes is not an insurer of the safety of an invited person present on such premises and, if such owner or occupant is not guilty of negligence or willful or wanton misconduct and no nuisance exists, he is not liable for injuries there sustained by such invited person.

■ Subsequent cases elaborated upon such principles of reasonable care and duty in a premises liability and latent defect cases. In *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992), this Court examined a situation in which a plaintiff had been injured due to the alleged defective condition of a parking area adjoining a restaurant business. In syllabus point three of *Andrick*, this Court held as follows:

Where the operator of a business obtains the right for its customers to park in an adjoining lot owned by another and invites them to do so, the operator has a duty of reasonable care to protect its invitees from defective or dangerous conditions existing in the parking area which the operator knows or reasonably should know exist.

The *Andrick* Court concluded that summary judgment was inappropriate because "little evidence was adduced in the proceedings below" on the issue of whether the defendants knew or should have known of the existence of a dangerous condition on the parking lot. 187 W.Va. at 712, 421 S.E.2d at 253.

■ Similarly, in *McDonald v. University of West Virginia Board of Trustees*, 191 W.Va. 179, 444 S.E.2d 57 (1994), a student filed a negligence action against the university trustees after suffering a broken leg during a stage movement class conducted on the lawn. This Court examined the *Puffer* standard and found that if the owner was not guilty of negligence or willful or wanton misconduct, and if no nuisance existed, there would be no liability. This Court concluded that the student in *McDonald* had failed to establish that the university was negligent concerning any irregularity in the lawn which allegedly precipitated the fall. In discussion of this matter, this Court quoted the following with approval:

In order to make out a prima facie case of negligence in a slip and fall case, the invitee must show (1) that the owner had actual or constructive knowledge of the foreign substance or defective condition and (2) that the invitee had no knowledge of the substance or condition or was prevented by the owner from discovering it.... With respect to slip-and-fall cases, the mere occurrence of a fall on the business premises is insufficient to prove negligence on the part of the proprietor.

191 W.Va. at 182, 444 S.E.2d at 60 (quoting 3 S. Speiser, *et al.*, *The American Law of Torts* § 14.14 (1986)). Thus, *McDonald* clarifies that before an owner can be liable under a negligence theory, he must have had actual or constructive knowledge of the defective condition which caused the injury. *See also In Estate of Helmick by Fox v. Martin*, 192 W.Va. 501, 453 S.E.2d 335 (1994).

In *Adkins v. Chevron, USA, Inc.*, 199 W.Va. 518, 485 S.E.2d 687 (1997), a truck driver brought a negligence claim against a business owner to recover for injuries allegedly sustained when a driveway collapsed under the driver's vehicle. There had apparently been a latent defect in the driveway, specifically a crack which had been covered with gravel. On appeal from a jury verdict in favor of the driver, this Court examined the sufficiency of the evidence presented by the driver and found that he had presented adequate evidence that the business had actual or constructive knowledge of the hidden danger in the driveway. 199 W.Va. at 523, 485 S.E.2d at 692. The *Adkins* Court examined precedent regarding the existence of a duty to exercise reasonable care. Utilizing the standards set forth in *Puffer, Andrick, and McDonald*, the *Adkins* Court analyzed the requirement of "knows or reasonably should know" and recognized that the manager for the defendant business specifically testified that he had knowledge of the crack in the driveway at least a month prior to the plaintiff's injury. *Id.* at 523, 485 S.E.2d at 692.[3] Thus, the actual or constructive knowledge requirement was fulfilled in *Adkins*.

---

3. In *Andrick,* this Court utilized the terms "actual

or constructive knowledge" or "learns or should

**280**

In *Mallet,* this Court explained that certain factors must be considered in a premises liability case. The *Mallet* Court cited, with approval, syllabus point three of *Sewell v. Gregory,* 179 W.Va. 585, 371 S.E.2d 82 (1988):

> The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?

The *Mallet* Court reasoned as follows in syllabus point six:

> In determining whether a defendant in a premises liability case met his or her burden of reasonable care under the circumstances to all non-trespassing entrants, the trier of fact must consider (1) the foreseeability that an injury might occur; (2) the severity of injury; (3) the time, manner and circumstances under which the injured party entered the premises; (4) the normal or expected use made of the premises; and (5) the magnitude of the burden placed upon the defendant to guard against injury.

206 W.Va. at 146, 522 S.E.2d at 437.

In *Story v. Worden,* 210 W.Va. 218, 557 S.E.2d 272 (2001), this Court explained that an exhaustive investigation of all the *Mallet* factors is not necessary at the summary judgment stage. 210 W.Va. at 221, 557 S.E.2d at 275. In *Story,* this Court stated that the contention that a summary judgment order failed to analyze all five *Mallet* factors was not well advanced. "While some of the *Mallet* factors may have application in a premises liability action at the summary judgment stage, the *Mallet* factors were intended to be used by a jury when determining liability." *Id.* at 221, 557 S.E.2d at 275.

In *Eichelberger v. United States,* 2006 WL 533399 (N.D.W.Va. March 3, 2006), the federal court examined West Virginia law with regard to a defendant's knowledge of a defective condition and held as follows:

> Thus, in order to establish a prima facie negligence claim in a slip and fall case, "the invitee must show (1) that the owner had actual or constructive knowledge of the foreign substance or defective condition and (2) that the invitee had no knowledge of the substance or condition or was prevented by the owner from discovering it."

2006 WL 522299 at *4 (citations omitted); *see also Bruno v. Town of Hempstead,* 248 A.D.2d 576, 670 N.Y.S.2d 864, 865 (1998) (owner of softball field not liable to player injured by slipping on sprinkler head alleged to be protruding from ground; no evidence that owner had knowledge of defective condition of sprinkler).

**B. Evidence in Present Case**

In the present case, the Appellants maintain that the testimony of Joseph F. Merendino, Jr., the tournament manager, precludes summary judgment because Mr. Merendino indicated that the pipe should have and could have been found by representatives of the Appellees.[4] In this Court's review of Mr. Merendino's testimony, however, it is apparent that Mr. Merendino had no personal information regarding the knowl-

have learned" or "knows or reasonably should know" to express the same requirement. 187 W.Va. at 711, 421 S.E.2d at 252.

4. The Appellees contend that this Court should not consider the Appellants' arguments regarding Mr. Merendino's testimony because the Appellants are attempting to raise theories on appeal that were not raised below. Specifically, the Appellants are now relying upon Mr. Merendino's testimony to imply that the pipe was indeed above ground, despite their failure to raise that precise contention regarding Mr. Merendino's testimony when the summary judgment hearing was held in the lower court. Likewise, the Appellees complain that the Appellants have altered their arguments regarding the testimony of Steve Aversa and Ronald Whiting with respect to whether the Appellees had knowledge of the existence of the buried pipe. The Appellants have also submitted the testimony of Charles Carpenter, in an apparent effort to raise suspicion regarding the meticulousness of the efforts taken to prepare the field. While this Court acknowledges that the Appellants may have emphasized different components of the extensive deposition testimony in their appellate efforts, this Court will consider the factual allegations made within that deposition testimony as they may affect the summary judgment determination.

edge possessed by any Appellee concerning the existence of the pipe on or buried in the field. When counsel for the Appellants asked Mr. Merendino whether the pipe "should have been found," Mr. Merendino answered as follows: "should have been found or could have been found." He immediately continued to explain, however, that "I wouldn't have found it because I didn't know it was there." Mr. Merendino's deposition testimony continued:

Q. Now the pipe, before the pipe was dug out of the ground, was it visible to the naked eye, to somebody out in the field, was it visible?

A. I can't answer that truthful. It was visible when I walked down to first base [following the injury]. I saw they went with their hands like this and it was there.

. . . .

Q. But how far did Mr. Aversa have to dig to get to the top of it?

A. Like I stated a minute ago, the one at first base, I could barely see the top of it.

Q. Because the people there already dug it—

A. Right. Now the one at second base, you had to dig down probably a good six or seven, eight inches before you could find them, and the other ones also.

. . . .

Q. Mr. Merendino, the pipe that Mr. Hawkins hit, it was exposed and above ground when he hit it, wasn't it?

MS. SANDERS: Objection.

A. It was exposed and above the ground when I went down the first baseline.

Q. You agree with me that it had to be exposed and above ground when Mr. Hawkins hit it, wouldn't you?

MS. SANDERS: Objection, asking for speculation.

Q. You can go ahead and answer.

A. I would probably have to agree with that, yes.

Q. Otherwise he won't have hit it; is that right?

A. That's probably a true statement.

It is apparent to this Court that Mr. Merendino's testimony consists primarily of spec-ulation regarding the degree to which the pipe might have protruded from the ground at the time Mr. Hawkin's knee encountered it. The testimony does not establish that the pipe was above ground or visible prior to the accident when representatives of the Appellees inspected and prepared the field. Nor does the testimony establish that the Appellees had any prior knowledge of the existence of the pipe or the ability to locate the pipe prior to the injury.

Mr. Merendino's testimony establishes only that, in hindsight, it becomes obvious that the pipe was in existence, either completely or partially covered, at the time the competition began. To that extent, Mr. Merendino stated that it could have been located. However, that is not the issue. The issue is whether the Appellees had knowledge of the pipe or should have, through reasonable inspection, discovered the existence of the pipe. There is no evidence that any Appellee, prior to the injury, had seen the pipe or had actual or constructive knowledge of the pipe's existence.

The Appellants further contend that the testimony of Steve Aversa and Ron Whiting preclude summary judgment by indicating that both men were aware that this field was also utilized by the girls' softball team and that the girls' baseline was five feet shorter than the men's baseline. This Court's review of the deposition testimony, however, reveals that Mr. Aversa, in charge of preparing the field for play, testified that he noticed no obstructions. He explained that while he was aware that a girls' softball team utilized the field and that their baselines were shorter, he had "no clue" how their bases were affixed to the ground and had no knowledge of anything buried in the ground in front of the bases during the tournament at issue.

Similarly, Mr. Whiting, a coordinator of the Marion County Softball Association, specifically denied knowledge of the buried pipe. While he was aware that men's softball leagues use longer distances from home plate to first than do girls' high school softball teams, he was unaware that any pipe was buried along the baseline.

The Appellants also assert that the deposition testimony of Charles Carpenter, a former coach of a girls' softball team, should prevent summary judgment. Mr. Carpenter had installed the pipe about five feet in front of the men's bases as part of his duties as the girls' softball team coach. Mr. Carpenter speculated that the pipe was probably exposed due to rain the night before the game or as a result of raking the field. Mr. Carpenter's testimony does not present any evidence that any Appellee had reason to know of the buried pipe on the field of play.

The Appellants further maintain that the factual disagreement regarding whether the pipe was hollow or concrete filled also precludes summary judgment. Mr. Carpenter, the individual who buried the pipe, testified that it was not filled with concrete when he buried it. Yet the Appellants maintain that there was concrete in the pipe which caused the injury. As the Appellees assert, whether or not the pipe was concrete-filled is immaterial. The underlying basis for the grant of summary judgment was the absence of a genuine issue of material fact regarding the Appellees' performance of their duties in the preparation of the field. In other words, even if the pipe which injured Mr. Hawkins was not the same pipe buried by Mr. Carpenter, it does not alter the fact that there is no evidence that the Appellees knew or should have known of the existence of the buried pipe. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the United States Supreme Court explained that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." 477 U.S. at 247–48, 106 S.Ct. 2505 (emphasis in original). As referenced above, a "material fact is one that has the capacity to sway the outcome of the litigation under the applicable law." *Jividen*, 194 W.Va. at 708, 461 S.E.2d at 454, syl. pt. 5. Under the accompanying circumstances of this case, this Court does not believe that the issue of whether the pipe contained concrete has the capacity to sway the outcome of the litigation.

IV. Conclusion

Subsequent to this Court's review of the complete record in a light most favorable to the Appellants, this Court cannot conclude that the trial court erred in finding no genuine issue of material fact and in awarding summary judgment. Mr. Hawkins' injury was an extremely unfortunate incident. However, "[t]he bare fact of an injury standing alone, without supporting evidence, is not sufficient to justify an inference of negligence." *Mrotek v. Coal River Canoe Livery, Ltd.*, 214 W.Va. 490, 492, 590 S.E.2d 683, 685 (2003) (quoting *Walton v. Given*, 158 W.Va. 897, 902, 215 S.E.2d 647, 651 (1975)).

The evidence in this case simply does not present a scenario in which the defendants, other than the Marion County Board of Education, which already settled with the Appellants, had any actual or constructive knowledge of the dangerous instrumentality. Nor does the evidence indicate any negligence in preparation of the field or failure to locate the pipe through reasonable inspection. The evidence provides no basis upon which to conclude that the injury was foreseeable in any manner, based upon the normal, expected use of the property in question and the knowledge that the Appellees had or should have had regarding the existence of the pipe. In light of the foregoing, this Court affirms the judgment of the lower court in all respects.

Affirmed.