No. 12-0106 -Walter E. Hersh and Mary L. Hersh v. E-T Enterprises, Limited Partnership, et al.

**FILED**

**November 12, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LOUGHRY, Justice, dissenting:

It is decisions like this that have given this state the unfortunate reputation of being a "judicial hellhole." The majority has saddled property owners with the impossible burden of making their premises "injury proof" for persons who either refuse or are inexplicably incapable of taking personal responsibility for their own safety. More troubling, however, is the fact that ordinary homeowners will pay the highest price for the majority's pandering to persons who ignore the risk associated with open and obvious hazards that ordinary, hard-working citizens encounter every day and invariably utilize their common sense and good judgment to avoid. This decision is a radical departure from our well-established law, and, therefore, I dissent.

Until now, a property owner was responsible for removing or warning of hidden dangers but could reasonably rely upon others to watch out for hazardous conditions which were readily apparent to anyone who took the time to look where they were going. Unfortunately, the majority out of an over abundance of sympathy for the petitioner has decided to place the risk of harm due to open and obvious hazards upon property owners

rather than on individuals who are simply careless. As a result of this decision, property owners have a duty to anticipate that persons who come onto their property will fail to pay attention to even the most obvious of risks.

The facts of this case illustrate why such a rule is simply untenable. Here, Mr. Eckenrode temporarily removed the handrails on the steps because they were in disrepair and he was concerned that teenagers who were using the handrails as ramps while skateboarding were going to be injured. He contracted to have the handrails reinstalled two weeks before the petitioner's fall. Given these circumstances, Mr. Eckenrode's actions were clearly reasonable. In fact, the City of Martinsburg building code, of which the majority summarily concludes he was in violation, even allows for removal of the handrails for purposes of repair. Nonetheless, according to the majority, Mr. Eckenrode should have foreseen that someone with balance and mobility issues, that could not walk without the aid of a cane and who was falling on a daily basis would choose to traverse the steps, despite the obvious lack of a handrail. Without question, Mr. Hersh suffered an unfortunate injury. However, we should not overturn years of precedent merely to indulge our natural sympathy for someone who was hurt because he chose to run the risk of walking down the steps when he knew that there was no handrail and that he was not capable of proceeding safely.

For more than one hundred years, it has been the law in West Virginia that "the owner [of premises] owes the duty of reasonable care to have and keep his premises in safe condition . . . **unless defects be known to [the entrant]**." Syl. Pt. 1, in part, *Sesler v. Rolfe Coal & Coke Co.*, 51 W.Va. 318, 41 S.E. 216 (1902) (emphasis added). In *Burdette v. Burdette*, 147 W.Va. 313, 127 S.E.2d 249 (1962), this Court stated:

> The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal, obvious, or ordinary risks attendant on the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers. . . . There is no liability for injuries from dangers that are obvious, reasonably apparent, or as well known to the person injured as they are to the owner or occupant.

*Id.* at 318, 127 S.E.2d at 252 (citations omitted). Referring to the above statement from *Burdette*, this Court further explained in *McDonald v. University of West Virginia Board of Trustees*, 191 W.Va. 179, 444 S.E.2d 57 (1994), that

> an owner of business premises is not legally responsible for every fall which occurs on his premises. He is only liable if he allows some hidden, unnatural condition to exist which precipitates the fall. He is not responsible if some small characteristic, commonly known to be a part of the nature of the premises, precipitates the fall. This has been otherwise stated as follows:
>
> > In order to make out a prima facie case of negligence in a slip and fall case, the invitee must show (1) that the owner had actual or constructive knowledge of the foreign substance or defective

3

condition and (2) that the invitee had no knowledge of the substance or condition or was prevented by the owner from discovering it . . . With respect to slip-and-fall cases, the mere occurrence of a fall on the business premises is insufficient to prove negligence on the part of the proprietor.

*Id.* at 182, 444 S.E.2d at 60 (quoting 3 S. Speiser, *et al.*, The American Law of Torts § 14.14 (1986)).

Applying the open and obvious doctrine, this Court affirmed the trial court's grant of judgment notwithstanding the verdict in *McDonald*. In that case, the plaintiff, Holly McDonald, filed suit against the trustees of West Virginia University after she fell during a stage movement class on university property. Although the plaintiff claimed that she fell into a "little pit" or "little crater-type thing," the evidence introduced at trial showed that the persons who inspected the lawn where the fall occurred could not find any hidden danger and the only hazards were open and obvious. Thus, there was no evidence that the university breached a duty with regard to keeping its premises safe.

Since *McDonald*, this Court has continued to consistently apply the open and obvious doctrine. For example, in *Senkus v. Moore*, 207 W.Va. 659, 535 S.E.2d 724 (2000), a patron of a veterinary hospital, Jennie Senkus, and her husband, Michael Senkus, filed an action for negligence and loss of consortium after Ms. Senkus tripped and fell over a scale

4

located on the floor in a corner of the hallway near an examining room. It was undisputed that the scale was in plain view of all patrons and was not a hidden danger. Ms. Senkus testified during her deposition that she did not remember anything obstructing her view of the scale; that she had passed by the scale on entering the examining room; and that she did not know why she did not see the scale as she was exiting the room. Affirming the circuit court's grant of summary judgment in favor of the veterinary hospital, this Court explained:

> In determining whether the circuit court properly granted summary judgment, it is important to review the essential elements of a negligence cause of action, which the Appellants had the burden to prove. Before the owner or occupier of premises may be held legally liable, it must be shown that the owner/occupier *owed a duty* to the person injured, that the duty was breached, and that the breach of duty was the proximate cause of the injury. *Atkinson v. Harman*, 151 W.Va. 1025, 158 S.E.2d 169 (1967); *see McMillion v. Selman*, 193 W.Va. 301, 303, 456 S.E.2d 28, 30 (1995).
>
> . . . .
>
> The fall by Ms. Senkus on the Appellees' property is insufficient to prove that the Appellees were negligent. While the Appellants contend that the scale was negligently placed on the premises, the Appellants failed to offer any evidence before the trial court to show that the placement of the scale breached any duty to them or that it was inherently dangerous or unsafe. Rather, the uncontradicted evidence is that Ms. Senkus' negligent failure to watch where she was walking was the sole precipitating cause of the accident. Where there is no evidence from which a rational trier of fact could reasonably infer a breach of duty, summary judgment is appropriate.

*Id.* at 662, 535 S.E.2d at 727; *see also Stevens v. West Virginia Inst. of Tech.*, 207 W.Va. 370, 532 S.E.2d 639 (1999) (reaffirming *Burdette* and finding that college student injured while

5

setting up volleyball standard at gymnasium on campus failed to provide sufficient evidence to survive defendant school's summary judgment motion); *Hawkins v. U.S. Sports Ass'n, Inc.*, 219 W.Va. 275, 633 S.E.2d 31 (2006) (utilizing test to establish *prima facie* negligence case set forth in *McDonald* and finding that defendant landowner did not have actual or constructive knowledge of buried plastic pipe on baseball field that caused injury to softball player when he slid toward first base).

Not only has this Court repeatedly and consistently applied the open and obvious doctrine, but we have done so even where there has been a violation of a state regulation. In *Estate of Helmick by Fox v. Martin*, 192 W.Va. 501, 453 S.E.2d 335 (1994), Harry Melvin Helmick was a passenger in an automobile that was struck by a truck upon exiting the parking lot of a restaurant. Mr. Helmick was rendered a quadriplegic, and he died sixteen months after the accident due to complications from his injuries. Mr. Helmick's estate filed suit alleging, *inter alia*, that the owner of the restaurant had failed to properly warn of the dangers of the parking lot and had failed to correct the hazard. The parking lot had an open boundary to the highway which was approximately 160 feet in length. Although it was safe to exit from the north end, there was insufficient visibility to safely exit from the south end where the accident occurred. During discovery, a district engineer employed by the West Virginia Department of Highways testified that state regulations did not allow unrestricted entry onto the highway for such a long distance. He explained that for

6

commercial property, the maximum allowable opening onto the highway was fifty feet and that in this instance, a sufficient sight distance to exit the parking lot safely only existed at the north end. He also indicated that a permit was required for every entry onto a state highway from a driveway or parking lot and that the restaurant had no such permit.

After the circuit court granted summary judgment, Mr. Helmick's estate appealed arguing that genuine issues of fact existed as to whether the owner of the restaurant was negligent. Affirming the circuit court's decision based upon the precedent set by *Burdette* and *McDonald*, this Court stated:

> All the parties recognized the dangers of the parking lot fronting Our Place Diner. The evidence demonstrated that Ms. Wamsley[1] and Mr. Helmick would frequent the restaurant and were aware that it was safer to exit the lot from the north end. The evidence is clear that the dangers of the lot were "as well known to the person injured as they [were] to the owner or occupant." Accordingly, we agree with the circuit court that the defendant is not legally responsible for the accident that occurred after Ms. Wamsley and Mr. Helmick left the diner.

*Martin*, 192 W.Va. at 505, 453 S.E.2d at 339 (footnote added).

Despite our well-established and long-standing precedent set forth above, the majority has concluded that the open and obvious doctrine is no longer viable because of the abolishment of contributory negligence and the adoption of the doctrine of comparative

---

[1]Ms. Wamsley was the driver of the car when the accident occurred.

fault.[2]   While the majority purports to frame its analysis in terms of the duty of a landowner, it then completely abandons that concept and focuses on the element of causation.   The majority clearly fails to understand that "the open-and-obvious doctrine is not concerned with causation but rather stems from the landowner's duty to persons injured on his or her property."   *Armstrong v. Best Buy Co., Inc.*, 788 N.E.2d 1088, 1091 (Ohio 2003).

In *Armstrong*, the Supreme Court of Ohio explained why the focus of courts abolishing the open and obvious doctrine in favor of the comparative negligence approach is misdirected.  The Court stated:

> By failing to recognize the distinction between duty and proximate cause, we believe that these courts have prematurely reached the issues of fault and causation. The Illinois Supreme Court recognized this distinction in *Bucheleres v. Chicago Park Dist.* (1996), 171 Ill.2d 435, 216 Ill.Dec. 568, 665 N.E.2d 826, a decision upholding the viability of the open-and-obvious doctrine in that state. The court stated: The existence of a defendant's legal duty is separate and distinct from the issue of a plaintiff's contributory negligence and the parties' comparative fault. *The * * * characterization of the open and obvious doctrine as a "defense" that should be submitted to the jury as part of the comparison of the relative fault of the parties overlooks the simple truism that where there is no duty there is no liability, and therefore no fault to be compared.  Id.*, 171 Ill.2d at 447, 216 Ill.Dec. 568, 665 N.E.2d 826.

---

[2]*See* Syl. Pt. 3, *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 356 S.E.2d 879 (1979).

788 N.E.2d at 1091 (emphasis added). The Court also noted that "[e]ven under the Restatement view . . . the focus is misdirected because it does not acknowledge that the condition itself is obviously hazardous and that, as a result, no liability is imposed." *Id.* In other words,

> [r]ecovery is barred when the danger is obvious, not because the negligence of the plaintiff is greater than that of the defendant, but because the defendant is not negligent at all. The defendant has no duty to warn against an obvious danger and cannot, therefore, be negligent in failing to give such a warning.

*Harrington v. Syufy Enter.*, 931 P.2d 1378, 1380 (Nev. 1997).

Continuing to adhere to the open and obvious doctrine, the Supreme Court of Ohio explained in *Armstrong* that

> [b]y focusing on the duty prong of negligence, the rule properly considers the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it. The fact that a plaintiff was unreasonable in choosing to encounter the danger is not what relieves the property owner of liability. Rather, it is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff. Ferrell, *Emerging Trends in Premises Liability Law*: *Ohio's Latest Modification Continues to Chip Away at Bedrock Principles* (1995), 21 Ohio N.U.L.Rev. 1121, 1134.

788 N.E.2d at 1091. Stated another way,

> [l]andowners are relieved of the duty to warn of open and obvious dangers on their premises because it is not reasonably foreseeable that a visitor exercising (as the law presumes) reasonable care for his own safety would suffer injury from such

9

blatant hazards. *See Blackmer v. Toohil*, 343 Mass. 269, 271–272, 178 N.E.2d 274 (1961); *St. Rock v. Gagnon*, 342 Mass. 722, 723–724, 175 N.E.2d 361 (1961). Stated otherwise, where a danger would be obvious to a person of ordinary perception and judgment, a landowner may reasonably assume that a visitor has knowledge of it and, therefore, "any further warning would be an empty form" that would not reduce the likelihood of resulting harm. *LeBlanc v. Atlantic Bldg. & Supply Co.*, 323 Mass. 702, 705, 84 N.E.2d 10 (1949). *See Bavuso v. Caterpillar Indus., Inc.*, 408 Mass. 694, 699, 563 N.E.2d 198 (1990) (products liability); *Waters v. Banning*, supra.

*O'Sullivan v. Shaw*, 726 N.E.2d 951, 954-55 (Mass. 2000).

I am deeply disappointed by the majority's decision to ignore the maxim of stare decisis and not adhere to this Court's prior decisions that have clearly articulated the duty of property owners with respect to persons entering their premises. The open and obvious doctrine has reflected sound public policy protecting property owners from owing a duty to persons who freely and willingly choose to expose themselves to open and obvious hazards and, as a result, suffer personal injuries. There have been many opportunities to abolish the open and obvious doctrine since the adoption of comparative fault in *Bradley*. Instead, this Court upheld the holdings of *Burdette* in *McDonald, Senkus, Stevens, Hawkins* and *Martin*. Moreover, in *Mallet v. Pickens*, 206 W.Va. 145, 522 S.E.2d 436 (1999), this Court adopted guidelines for assessing whether an owner or possessor of land has exercised reasonable care and reaffirmed *Burdette* by recognizing that

> [w]hile the existence of a duty is defined in terms of foreseeability, it also involves policy considerations including

10

'the likelihood of injury, the magnitude of the burden guarding against it, and the consequences of placing that burden on the defendant.'

*Id.* at 156, 522 S.E.2d at 447 (citation omitted). Justice Warren McGraw warned in *Mallet* that

a line must be drawn between the competing policy considerations of providing a remedy to everyone who is injured and of extending exposure to tort liability almost without limit. It is always tempting to impose new duties and concomitantly, liabilities regardless of the economic and social burden.

*Id.* at 156 n.15, 522 S.E.2d at 447 n.15 (citation omitted). Unfortunately, the majority has now given into this temptation.

By abolishing the open and obvious doctrine, the majority has created a subjective legal duty which is contingent, uncertain, and impractical for West Virginia property owners who wish to comply with the law. The decision unfairly and unjustly expands the legal duty of property owners and makes them potentially liable regardless of how obvious the danger may be. For example, as a result of the majority's decision, farmers who enclose their property with barbed wire face liability whenever someone simply walks into the fence and suffers an injury. Similarly, owners of land with streams and ponds face potential liability if someone falls into the water. In fact, every natural hazard now represents another source of potential liability for the property owner. Should a proactive property owner seek to mitigate the hazard by placing a barrier around it, I am certain that a property

11

owner somewhere would face liability because they should have anticipated that someone could be injured while trying to climb over the barrier.

More to the point, the majority's decision eliminates the ability of circuit courts to dispose of meritless litigation by granting summary judgment pursuant to Rule 56 of the West Virginia Rules of Civil Procedure. Litigation will abound as every slip and fall case will now be presented to a jury to apportion fault. The majority ignores this problem by suggesting that the focus should now be upon foreseeability and indicates in new syllabus point five that "if it is foreseeable that an open and obvious hazard may cause harm to others . . . then there is a duty of care upon the owner or possessor to remedy the risk posed by the hazard." In fact, by definition, it is always foreseeable that open and obvious hazards pose a risk to others. That is why they are considered to be hazards. The majority's decision simply guarantees that every premises liability case poses a question of fact for jury determination.

As further evidence of the underdeveloped and impracticable rule of law the majority has now set forth, the broad and imprecise language in its new syllabus point could ostensibly be construed as creating strict premises liability. As noted above, all "hazards" are reasonably foreseeable causes of potential harm. The majority holds that a premises owner has a duty to *remedy* the risk posed by the hazard." (Emphasis added). In the body

12

of the opinion explaining this new rule of law, the majority states that property owners have a duty to "eliminate" hazards where harm is foreseeable. Whether intended or not, this wording suggests that hazards must be wholly eradicated. To the extent a person is injured as the result of a hazard, the mere existence of the hazard itself establishes that it was not "eliminated" or "remedied." As such, by the time a careless person injures him or herself with an open and obvious hazard, a property owner has already failed in his or her duty of care as crafted by the majority's new syllabus point. If the majority actually intended to convey that the steps taken by a premises owner to *address* or *mitigate* a hazard be likewise subject to a reasonableness analysis by the jury, it failed miserably and has created a troublesome lack of clarity as to what type of action is needed to address hazards by a property owner.[3] Some hazards cannot be eliminated; some cannot be eliminated without unreasonable effort and expense. Some hazards are quite simply required to be there, such as the barbed wire fence described above. That the majority would have the state's property owners "parade the horribles" to determine precisely what degree of carelessness or stupidity is cost effective to guard against under this new limitless rule of law is irresponsible.

---

[3]The majority's inclusion of the requirement that "[w]hether the actions employed by the owner or possessor to remedy the hazard were reasonable is a question for the jury" certainly suggests that the property owner's actions should be assessed by the jury. That concept would be clear had the majority chosen different language which clarified that the nature of the hazard and commensurate propriety of mitigating the hazard, if appropriate, is a matter for the jury to determine.

Without question, rates for property insurance will increase because of this decision. Therefore, the majority has made owning property in West Virginia more costly. I disagree with this unwise and unnecessary change in our premises liability law. Accordingly, I respectfully dissent.